[Cite as *State v. Smith*, **2021-Ohio-1185**.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 109221 |
| v. | : | |
| TATIA SMITH, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 8, 2021

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-631352-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kristin M. Karkutt, Assistant Prosecuting Attorney, *for appellee.*

Joseph V. Pagano, *for appellant.*

SEAN C. GALLAGHER, P.J.:

{¶ 1} Tatia Smith appeals her conviction for aggravated murder, entered following a bench trial in which the trial court rejected Smith's claims of self-defense and found that the state proved prior calculation beyond a reasonable doubt. Smith was sentenced to serve a life sentence with parole eligibility after 20 years. For the following reasons, we affirm the conviction.

{¶ 2} The victim in this case, Lisa Bradley, was stabbed twice by Smith in an early morning altercation outside a convenience store known as the American Food Market, located at 2603 Woodhill Road, near Smith's home. Smith resided in the Woodhill Home Estates in apartment B, 2529 Woodhill Road. Smith is middle-aged and has respiratory issues. The events started the evening before. Smith was speaking with her friend outside an apartment building across from Woodhill Home Estates. The apartment building is located at 10518 Woodland Avenue. Others were present and passing a bottle of liquor. Smith admits to being intoxicated. At some point in the evening, the victim, while loudly arguing with another, approached Smith's group. Smith asked the victim to be quiet, which angered the victim. The two began fighting, with the victim "getting the better" of Smith. While Smith was on the ground, the victim kicked Smith in the head, and at one point used a knife described as a box cutter to superficially cut Smith across the cheek. The trial court, in rendering its verdict, described the incident as the victim "slashing" Smith in the face. Members of the group separated the combatants, both of whom went their

separate ways. Smith refused offers to seek medical attention for the laceration, which produced a fair amount of blood. Smith was taken home.

{¶3} At about 4:00 a.m., Smith awoke and realized she was out of cigarettes. Still admittedly intoxicated, Smith armed herself with a knife in light of the earlier events. Smith claims she proceeded to the convenience store to purchase cigarettes, and while she was completing the transaction with the clerk, the victim entered the store and stood behind Smith. Smith testified to that being her first interaction with the victim since the earlier fight and to being terrified of the victim. Her terror was not communicated or apparent to the clerk. Video footage from the store's camera shows Smith holding something under a white napkin, which appears to be the knife she brought with her, when she first entered the store and before completing her transaction with the clerk. After completing the transaction, Smith transferred the white napkin to her right hand and exited the store. She can be seen turning immediately behind the door, out of the view of the clerk. Smith appears to have the napkin and knife in her right hand while standing outside and made no other movements other than hiding herself behind the wall until attacking the victim. According to Smith, she felt incapable of walking back to her home in light of her respiratory issues, which prevented her from escaping the younger victim.

{¶4} The victim, without purchasing anything, followed Smith out the door. According to the video evidence, and that of the responding officers, the victim's knife remained in her pocket. As soon as the victim stepped outside the door, Smith can be seen swinging her right hand two times into the victim's neck

and upper chest.  The first wound was superficial, but the second proved fatal.  The knife itself is not visible during the attack, but the second blow caused a significant amount of blood spatter across the glass door.  Smith fled and threw the knife she used into a storm drain on her way home.  The victim reentered the store holding her neck but immediately collapsed.  The clerk called emergency services and attempted to provide aid, but the victim died shortly after being transported to the hospital.  Police officers arrested Smith later that morning.

{¶ 5}  In her interviews with police officers, Smith mentioned that she had seen the victim on her way into the convenience store — a fact she disowned at trial.  Smith mentioned in her initial interview that the victim was looking for her phone, presumably lost in the earlier scuffle.  Further of importance, at no time during the interview did she claim that the victim threatened her outside the store.  At the time, Smith stated that when the victim exited the store, Smith went for "the jugular."  At trial, Smith claimed that the victim exited the store, threatened to kill her, and began reaching for the box cutter clipped to her front pocket.  It was only then that Smith retrieved her knife and swung at the victim in the claimed attempt to prevent the victim from grabbing and wielding her own weapon.

{¶ 6}  The trial court noted, in rendering its verdict, that the video evidence did not support Smith's claim.  The time frame was limited.  From Smith walking into the store until she fled after the attack, approximately three minutes transpired.  The trial court concluded that the state disproved self-defense, heavily relying on the

video evidence of the deadly encounter, and the state also demonstrated beyond a reasonable doubt that Smith murdered the victim with prior calculation and design.

{¶ 7} In this timely appeal, albeit separated into three assignments of error, Smith claims that her conviction for aggravated murder was against the weight of the evidence because the state failed to disprove the affirmative defense of self-defense beyond a reasonable doubt and, in the alternative, that there was insufficient evidence of prior calculation and design. Neither argument has merit.

{¶ 8} A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 9} Smith was convicted of aggravated murder, which includes an element of purposefully killing another with prior calculation and design. "Whether a defendant acted with prior calculation and design is determined on a case-by-case basis, following an analysis of the specific facts and evidence presented at trial." *State v. Hicks*, 8th Dist. Cuyahoga No. 102206, 2015-Ohio-4978, ¶ 41, citing *State v. Orr*, 8th Dist. Cuyahoga No. 100841, 2014-Ohio-4680, ¶ 77. "Prior calculation and design" has been interpreted to mean more than a momentary deliberation; it requires a "scheme designed to implement the calculated decision to kill." *State v.*

*Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 38-39, quoting

*State v. Cotton*, 56 Ohio St.2d 8, 11, 381 N.E.2d 190 (1978). "While '[n]either the

degree of care nor the length of time the offender takes to ponder the crime

beforehand are critical factors in themselves,' 'momentary [or immediate]

deliberation is insufficient.'" *Id.*, quoting *State v. D'Ambrosio*, 67 Ohio St.3d 185,

196, 616 N.E.2d 909 (1993), and the 1973 Legislative Service Commission Comment

to R.C. 2903.01.

> The apparent intention of the General Assembly in employing the phrase "prior calculation and design" was to require more than the few moments of deliberation permitted in common law interpretations of the former murder statute, and to require a scheme designed to implement the calculated decision to kill.

*Id.* If the defendant had sufficient time and opportunity for the planning of an act

of homicide, and "the circumstances surrounding the homicide show a scheme

designed to implement the calculated decision to kill, a finding by the trier of fact of

prior calculation and design is justified." *Hicks* at ¶ 41, citing *Cotton*, paragraph

three of the syllabus.

> {¶ 10} Thus, "prior calculation and design" can be proven
>
> from the circumstances surrounding a murder in several ways, including: (1) "evidence of a preconceived plan leading up to the murder"; (2) "evidence of the defendant's encounter with the victim, including evidence necessary to infer that the defendant had a preconceived notion to kill regardless of how the events unfolded" or (3) "evidence that the murder was executed in such a manner that circumstantially proved the defendant had a preconceived plan to kill," such as where the victim is killed in a cold-blooded, execution-style manner.

*Hicks* at ¶ 40, citing *Orr* at ¶ 75, and *State v. Dunford*, 11th Dist. Ashtabula No. 2009-A-0027, 2010-Ohio-1272, ¶ 53; *State v. Trewartha*, 165 Ohio App.3d 91, 2005-Ohio-5697, 844 N.E.2d 1218 (10th Dist.). Some other factors that may be considered include "whether the defendant and the victim knew each other and, if so, whether the relationship was strained; whether there was thought or preparation in choosing the murder weapon or murder site; and whether the act was 'drawn out' or 'an almost instantaneous eruption of events.'" *Hicks* at ¶ 41, citing *State v. Taylor*, 78 Ohio St.3d 15, 19, 676 N.E.2d 82 (1997). These factors are not exhaustive. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 40 (O'Donnell, J., dissenting); *State v. Truss*, 10th Dist. Franklin No. 18AP-147, 2019-Ohio-3579, ¶ 36 (applying the rationale discussed in Justice O'Donnell's *Walker* dissent).

{¶ 11} This distinction between what is considered "momentary" for the purposes of prior calculation and design largely consumes the discussion. Although the analysis is meant to be applied as a matter of law for the purposes of determining whether sufficient evidence of prior calculation and design was elicited at trial, *see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 11, courts of review must parse the facts of each particular case. This particularized review, however, cannot occur in a vacuum. Sufficiency-of-the-evidence analysis is a determination as a matter of law. The body of case law that has developed since 1974 must be considered in construing the particular facts of each case — to conclude otherwise would leave courts of review as the ultimate arbitrators of each individual case leading to disparate results. Our review begins with reviewing the instructive

body of law that exists. We cannot solely rely on our own view of what distinguishes momentary deliberation (the absence of prior calculation and design) from that which is sufficient to prove aggravated murder.

{¶ 12} The briefness of the fatal encounter is not dispositive. In *Conway*, for example, the defendant and a group of people were involved in an altercation with another group — resulting in the defendant's brother getting cut with a knife. *Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, at ¶ 40. The defendant immediately retrieved a hand gun and proceeded to rapidly approach two members of the other group while firing shots from 30 feet away. *Id.* at ¶ 42. By the time the last shots were fired, the defendant was eight feet from the two victims. *Id.* In construing the evidence in the light most favorable to the prosecution, the Ohio Supreme Court concluded that a reasonable juror could have concluded that the defendant formulated and carried out a plan to murder the victim in retaliation for that victim's attack on the defendant's brother. *Id.* at ¶ 43. The defendant demonstrated an intent to carry out the attack by retrieving the firearm and never abandoned that plan despite the brevity of the planning process. *Id.*

{¶ 13} Thus, under *Conway,* even a short period of time between the fight and the murder can be deemed a sufficient period of time that an act can be considered to be done with prior calculation and design despite the lack of evidence that the defendant entered the events with a preconceived notion to commit murder. *See also Taylor,* 78 Ohio St.3d at 19, 676 N.E.2d 82. In *Taylor*, the defendant and his girlfriend were patronizing a bar one evening when the girlfriend's "ex," the

victim, entered. Disputed evidence painted two pictures: either the victim sat quietly in the corner (according to disinterested patrons) or was loud, boisterous, and attempted to humiliate the defendant (according to the defendant and his friends). The victim and the defendant verbally fought about a song on the jukebox. Angered, the defendant immediately walked back to his table and told his group they were leaving. On his way out, the defendant shot the victim several times, the second round of which occurred as the victim was already incapacitated. Importantly, the two to three minutes between the jukebox incident and the actual murder was not considered momentary or instantaneous. *Id.* at ¶ 22, *see also State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 168 (there was sufficient evidence of prior calculation and design from a spontaneous armed robbery in which the victim tried to flee and was shot by the defendants, who were chasing after the victim). The Ohio Supreme Court held that prior calculation and design was based on the reasonable inference that the defendant consciously planned to murder the victim, forming the requisite decision in the fleeting time that transpired between the verbal altercation and the murder as demonstrated by the defendant's orchestrating the manner in which his group exited. *Id.*

{¶ 14} This contrasts with the momentary deliberation demonstrated in the narrowly decided decision in *Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, at ¶ 15. In *Walker*, the defendant and several friends started a melee at a club. *Id.* The group perceived a slight by the victim against a member of the defendant's group and enacted a plan to assault the victim. *Id.* at ¶ 24. According

to the narrowly formed majority, there was no evidence that the defendant or his friends devised a scheme to murder the victim during those planning stages and the evidence conclusively demonstrated a plan to commit felonious assault that was escalated by the defendant as the fight descended into chaos. *Id.* at ¶ 26. During a brief portion of the fight, approximately 20 seconds or so, the defendant can be seen moving away from his group and only at that time did the Ohio Supreme Court characterize the defendant as having first formed the intent to murder the victim. *Id.* Based on the short duration of that dissected series of events, the Ohio Supreme Court concluded that the 20-second deliberative period was considered to be momentary for the purposes of the prior calculation and design analysis. *Id.*; *see also State v. Reed*, 65 Ohio St.2d 117, 119, 418 N.E.2d 1359 (1981) (defendant murdered a police officer who stopped the defendant from fleeing a robbery, but the defendant's statement that he intended to murder any police officer that "got in his way during a robbery" was insufficient to prove prior calculation and design despite the fact the defendant had time between being stopped and exiting the car before the shooting started); *but see State v. Goodwin*, 84 Ohio St.3d 331, 344, 703 N.E.2d 1251 (1999) (defendant's act during a robbery of placing the gun to the victim's head in furtherance of a calculated plan to obtain money demonstrated prior calculation and design because of the time between that act and pulling the trigger).

{¶ 15} Unlike *Conway* and *Taylor* (minutes of a deliberative period) in which the entire duration of events was considered, *Walker* (20 seconds of a deliberative period) compartmentalized the events based on one of the

codefendants' conduct in escalating what was an assault. However, the brevity of the events alone is not dispositive. *In State v. Lash*, 8th Dist. Cuyahoga No. 104310, 2017-Ohio-4065, for example, the defendant murdered the victim during a brief altercation at a bar. The victim had asked a friend to buy a round of drinks. *Id.* at ¶ 10. As the friend walked up to the bar, two shots were heard, followed by a brief pause of about five to seven seconds, and four more shots followed. *Id.* Despite observing that the shooting occurred "suddenly and violently," the panel concluded that the "circumstances reflect not a momentary impulse, but rather a designed scheme to implement a calculated decision to kill the victim." *Id.* at ¶ 40. The panel noted that the trier of fact could consider the fact that after the first round of shots, when the victim was wounded, the defendant's conduct in shooting the victim at close range heavily weighed on the prior calculation and design calculus despite the fact that the time between the initial shooting and the mortal shots was five to seven seconds. *See id.*, *discretionary appeal not allowed*, *Lash*, 151 Ohio St.3d 1507, 2018-Ohio-365, 90 N.E.3d 949; *see also State v. Ivery*, 9th Dist. Summit No. 28551, 2020-Ohio-3349, ¶ 11 (defendant's conduct in arming himself with a weapon after an earlier confrontation and then using the weapon in a confrontation escalated by the defendant constituted prior calculation and design).

{¶ 16} The rationale supporting the *Lash* decision is in line with the interpretation of the "prior calculation and design" that has existed since the phrase first appeared in 1974. *Cotton*, 56 Ohio St.2d at 11, 381 N.E.2d 190. In *Cotton*, the defendant, with the help of his wife, attempted to pass a fraudulent check at a store.

The clerk was aware of the theft of the checkbook and called authorities. Two officers arrived, and the defendant fled with the officers in pursuit. One officer caught up with the defendant, and a scuffle ensued, at which time the defendant grabbed the officer's service weapon and fired two shots wounding both officers. Neither was able to move, but the defendant approached the second officer who was unable to stand and near the defendant's car. The defendant steadied the weapon and fired the fatal shot, a fact of consequence for the prior calculation and design consideration. *Id.* The Ohio Supreme Court concluded that those facts demonstrated sufficient evidence of prior calculation and design based on the short time between the officer's arrival and the defendant's conduct in murdering one of the officers. *Id.*; *but see State v. Foster*, 10th Dist. Franklin No. 07AP-419, 2007-Ohio-6279 (the act of firing a warning shot before murdering the victim could not form the reasonable inference of an intent to murder or implement a design to kill since the warning shot was not meant to cause harm); *State v. Hopkins*, 7th Dist. Mahoning No. 15 MA 0224, 2018-Ohio-373 (approximately a minute of deliberation between a confrontation and the murder insufficient to prove prior calculation and design). As is readily apparent, *Walker* represents a shift in the Ohio Supreme Court's analysis. No longer can courts consider the entirety of the events preceding the murder, such as in *Cotton,* in isolation. In *Walker*, the Supreme Court dissected the events into a series of events based on what it perceived to be a break in the chain of causation — the felonious assault was unilaterally escalated into murder by one of the codefendants.

{¶ 17} Based on the foregoing discussion, the definition of prior calculation and design is nebulous and fact dependent. Although development of a bright-line test that "emphatically distinguishes between the presence or absence of 'prior calculation and design'" has been deemed an impossible task, *Taylor*, 78 Ohio St.3d at 20, 676 N.E.2d 82, Ohio courts have been largely left with a framework of decisions that must guide courts of review through the fog of analysis. Each appellate panel is tasked with determining the difference between momentary deliberation and prior calculation that at times resembles nothing more than Justice Stewart's "I know it when I see it" standard. *Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring). It may well be time for Ohio courts to look for a more exacting standard that readily discerns the multitude of decisions into a workable standard. Until that time, we must apply the time-worn standard as it exists.[1] To conclude otherwise would imply that sufficiency of the prior calculation and design evidence is a rudderless endeavor, bending to the whims of each individual court of review.

{¶ 18} When considering the totality of the evidence presented at trial in this case, in a light most favorable to the prosecution as is required under the sufficiency

---

[1] The Ohio Supreme Court has accepted review of *State v. Jones*, 2020-Ohio-281, 151 N.E.3d 1059 (1st Dist.), *discretionary appeal allowed, State v. Jones*, 2020-Ohio-3275, 147 N.E.3d 655, in which the First District panel concluded that the defendant's strained relationship was insufficient evidence of prior calculation and design despite the fact that the defendant spent a morning sending the victim vulgar and derogatory text messages seeking to engage in mutual combat and then the defendant proceeded to bring a weapon to the encounter. When the two men met, the defendant took his weapon from the car, which was left running and parked in a "no parking zone," approached the victim, and shot three times. *Id.*

analysis, the state demonstrated prior calculation and design. Although Smith argues that the fatal incident was an "eruption" of events that were both unexpected and unplanned, the evidence demonstrates otherwise. There was no break in the series of events that began as Smith entered the store such that we can compartmentalize the series of individual steps as was found dispositive in *Walker*. Before the victim, with whom Smith had a demonstrably strained relationship, entered the store, Smith can be seen concealing what appears to be the knife under a white cloth or paper napkin — fitting into the version of events she told police officers at the time of her arrest that Smith had interacted with the victim on the way into the store. Thus, there is evidence that Smith was aware of the victim's presence before the three-minute episode in the convenience store began and it is reasonable to infer a plan was enacted at that time from Smith's conduct in the store, the manner in which she exited it, and the method used in causing the victim's death. *State v. Harris*, 2017-Ohio-2751, 90 N.E.3d 342, ¶ 37 (8th Dist.).

{¶ 19} At the time Smith was completing her transaction with the store clerk, the victim stood with her arms crossed and did not appear to threaten or act menacingly toward Smith. After leaving, however, Smith concealed herself behind the door, out of the clerk's line of sight. As the victim exited, the attack came immediately and in Smith's own words, she went for the victim's "jugular." After landing the first superficial blow, Smith proceeded to ensure the victim's death by swinging a second time correcting her aim. After stabbing the victim in the "jugular," the attack ceased. In other words, there is evidence that Smith concocted

a plan to ambush the victim upon entering the store in retaliation for the earlier altercation. Although that plan was set in motion based on the circumstantial meeting, there is also evidence that Smith intended the victim's death once those circumstances presented the opportunity. *See, e.g., Truss*, 10th Dist. Franklin No. 18AP-147, 2019-Ohio-3579, at ¶ 38 (prior calculation and design proven based on the defendant, although no evidence of "bad blood" between the defendant and the victim was presented, had a short discussion with the victim in the parking lot of a convenience store, walked into the store together with the defendant holding the door for the victim and looking around the store before immediately firing two shots to kill the victim). The evidence further demonstrates that there was sufficient time and opportunity between the circumstantial meeting and the fatal stabbing for the planning and killing to constitute prior calculation and design. The limited time between the planning and execution is not itself dispositive, and as a result, we overrule Smith's sole argument as it pertains to the sufficiency of the evidence. Smith's aggravated murder conviction is supported by sufficient evidence.

{¶ 20} In the sole remaining claim, Smith claims that the trier of fact lost its way in concluding that Smith had not acted in self-defense. A claim that a verdict is against the weight of the evidence involves a separate and distinct test that is much broader than the test for sufficiency. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193; *Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 7 (the difference between a bench and a jury trial, with respect to the weight of the evidence, rests solely with the unanimity requirement for an

appellate panel to reverse a jury trial).  In contrast to sufficiency of the evidence, "weight of the evidence involves the inclination of the greater amount of credible evidence." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.  While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387.  "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *Id.*  The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).  "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *Martin* at 175.

{¶ 21} Self-defense claims are generally an issue of credibility.  If evidence presented at trial tends to support the conclusion "that the defendant used force against another in self-defense or in defense of another, the state must prove beyond a reasonable doubt that the defendant did not use the force in self-defense or defense of another." *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶ 49, citing R.C. 2901.05(B)(1).  However, in light of the conjunctive nature of the

self-defense elements, the state need only disprove one of the elements of self-defense beyond a reasonable doubt at trial to sustain its burden. *Id.*, citing *State v. Petway*, 2020-Ohio-3848, 156 N.E.3d 467, ¶ 55 (11th Dist.), and *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31. In order to establish the inapplicability of self-defense, the state must demonstrate (1) that the defendant was at fault in creating the situation giving rise to the affray; (2) that the defendant lacked a bona fide belief that he was in imminent danger of death or great bodily harm or that another means of escape from such danger existed negating the need for the use of deadly force; or (3) that the defendant violated a duty to retreat or avoid the danger. *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 258, quoting *State v. Barnes*, 94 Ohio St. 3d 21, 24, 2002-Ohio-68, 759 N.E.2d 1240; *see also State v. Williams*, 1st Dist. Hamilton No. C-190380, 2020-Ohio-5245, ¶ 11, quoting *State v. Salaam*, 2015-Ohio-4552, 47 N.E.3d 495, ¶ 15 (1st Dist.), and *State v. Browner*, 1st Dist. Hamilton No. C-100247, 2010 Ohio App. LEXIS 5260, ¶ 8 (Dec. 15, 2010).

{¶ 22} Smith claims the trier of fact lost its way in concluding that the state disproved self-defense because she was not at fault in creating the situation in which deadly force was used. According to Smith,

> [t]he evidence demonstrates that [the victim] created the situation; she was the aggressor when she attacked Ms. Smith at 9 p.m. (Tr. 66, 74-76, 78, 80, 87, 101, 103, 105) Her actions of following Ms. Smith into and out of the store at 4 a.m.; while still carrying the same box cutter indicate she was continuing to pursue Ms. Smith at 4 a.m. (Tr. 161, 185, 199, 274, State's Exs. 48 & 50) The toxicology report revealed [the

victim's] alcohol level was elevated. (Tr. 48-49) She was intoxicated at the time of her death. (Tr. 50).

Thus, Smith entirely relies on the fact of the earlier altercation in which the victim caused injury to Smith for the purposes of demonstrating that Smith was not at fault in creating the situation in front of the convenience store.

{¶ 23} It is a well-settled rule that, before a person can avail himself of the plea of self-defense, the defendant, in the least and consistent with her own safety, must avoid creating the situation in which the necessity of taking another life arises. If one has reason or belief of an imminent attack in a manner that threatens bodily injury or death, the defendant must avoid the attack if it is possible to do so, and the right of self-defense does not arise unless the defendant is reacting to another's aggression.  In general, voluntarily participating in or initiating a confrontation, especially for purposes other than protection, cannot justify or excuse the killing of another on the basis of self-defense.  Smith acted inconsistent with her claims of self-defense.  It would have been reasonable to seek assistance and call emergency services while the victim and Smith remained in the convenience store — at a time when the victim's ability to attack was monitored by the store clerk.  Instead, Smith created a situation in which a confrontation would occur outside the viewing of the clerk by exiting the store and hiding behind the exterior wall.  Without warning, she immediately attacked the victim when the opportunity she created manifested.  This action alone is inconsistent with a theory of self-defense.  The fact that the victim

initiated and escalated the earlier confrontation does not justify Smith's actions at the convenience store hours later.

{¶ 24} The earlier altercation, although it impacts Smith's state of mind for the purpose of demonstrating her reasonable belief of being in imminent, mortal danger, is not relevant to determining whether the victim was at fault for creating the later situation. *See, e.g., State v. Thomas*, 77 Ohio St.3d 323, 330, 673 N.E.2d 1339 (1997) (domestic abuse weighs on the defendant's belief in the imminence of life-threatening conduct by the victim); *Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, at ¶ 53 (although arguably the victim attacked the defendant after a brief pause during an altercation, the defendant escalated the situation by drawing a firearm during what thereto had been limited to unarmed combat). The creation of the situation must be contemporaneous with the defendant's application of force. *See, e.g., State v. Chandler*, 2017-Ohio-8573, 99 N.E.3d 1255, ¶ 17 (8th Dist.) (defense of another is not viable when the victim allegedly threatened the third party hours before the defendant used deadly force); *State v. Sekic*, 8th Dist. Cuyahoga No. 95633, 2011-Ohio-3978, ¶ 15 (defendant cannot claim self-defense when returning to confront another after an earlier confrontation); *State v. Thomas*, 8th Dist. Cuyahoga No. 94042, 2010-Ohio-5237, ¶ 20 (offender shared fault in instigating the fatal confrontation by returning to the scene of an earlier altercation). Smith's reliance on the victim's conduct in creating the situation hours before the fatal altercation, is therefore, misplaced. That evidence does not establish that the victim was at fault for creating the fatal situation, nor are the victim's actions in

following Smith outside the store enough to demonstrate the victim's desire to continue the earlier altercation.

{¶ 25} Further, the trier of fact was also free to consider Smith's actions following the murder as it pertains to her credibility. It is reasonable to conclude that if Smith genuinely believed that she was acting in self-defense at the convenience store, she would not have fled the scene and would have immediately called for police assistance. *State v. Reyes-Figueroa*, 8th Dist. Cuyahoga No. 108609, 2020-Ohio-4460, ¶ 51; *State v. Bragg*, 8th Dist. Cuyahoga No. 93650, 2010-Ohio-6488, ¶ 31. And Smith's credibility could also be reasonably questioned for her failure to even mention to the investigating officers that she believed the victim was about to attack her outside the convenience store. *Id.* More important, the trier of fact could reasonably infer that Smith did not believe her actions to be justified from her attempt to dispose of the murder weapon in the effort to prevent its recovery. *Id.* In short, Smith has failed to demonstrate that the trial court lost its way by discrediting Smith's testimony, the only evidence in favor of self-defense. As a result, it can be concluded that the state disproved self-defense beyond a reasonable doubt and that this is not the exceptional case warranting appellate intervention. Smith's conviction is not against the weight of the evidence.

{¶ 26} The conviction is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
EILEEN T. GALLAGHER, J., CONCUR