[Cite as *State v. Rengert*, 2021-Ohio-2561.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| SHALENE RENGERT | : | Case No. 19 CAA 10 0056 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                 Pleas, Case No. 18 CRI 050287


JUDGMENT:                        Affirmed


DATE OF JUDGMENT:                July 27, 2021


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

ELIZABETH MATUNE                          APRIL F. CAMPBELL
149 North Union Street                    545 Metro Place South
Delaware, OH  43015                       Suite 100
                                          Dublin, OH  43017

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant, Shalene Rengert, appeals her September 23, 2019, convictions in the Court of Common Pleas of Delaware County, Ohio.  Plaintiff-Appellee is the state of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶ 2}   Appellant and the victim, Thomas Rengert, were married on March 27, 2018.

{¶ 3}   On May 18, 2018, the Delaware County Grand Jury indicted appellant on one count of felonious assault in violation of R.C. 2903.11(A)(2) (deadly weapon) and one count of domestic violence in violation of R.C. 2919.25.  Said charges arose from an incident on May 5, 2018, wherein appellant stabbed Thomas in the leg.

{¶ 4}   A jury trial commenced on August 6, 2019.  Appellant claimed self-defense. The jury found appellant guilty as charged.  By judgment entry filed September 23, 2019, the trial court merged the two offenses and sentenced appellant to five years of community control.

{¶ 5}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶ 6}   "THE TRIAL COURT ABUSED ITS DISCRETION IN EXCLUDING THREE WITNESSES, REQUIRING REVERSAL OF SHALENE RENGERT'S CONVICTIONS: (1) DEFENDANT'S REPUTATION FOR DISHONESTY WITNESS; (2) DEFENDANT'S REPUTATION FOR VIOLENCE WITNESS; AND (3) DEFENDANT'S BATTERED-WOMEN'S SYNDROME EXPERT."

II

{¶ 7}  "THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING THE STATE TO PUT ON REBUTTAL WITNESSES WHO WERE ONLY GIVEN TO EXPLAIN THE STATE'S CASE, RATHER THAN EXPLAIN, REFUTE, OR DISPROVE NEW FACTS INTRODUCED BY SHALENE RENGERT."

III

{¶ 8}  "THE TRIAL COURT ERRED IN INSTRUCTING THE JURY WITH RESPECT TO TWO ASPECTS OF SELF-DEFENSE: (1) THAT THE EVIDENCE "MAY" SHOW RATHER THAN "TENDS" TO SHOW THAT SHALENE RENGERT ACTED IN SELF DEFENSE; AND (2) THAT SHALENE RENGERT HAD A DUTY TO RETREAT."

IV

{¶ 9}  "CUMULATIVE ERROR AT TRIAL DENIED SHALENE RENGERT HER RIGHT TO A FAIR ONE."

V

{¶ 10}  "THE STATE'S EVIDENCE THAT SHALENE RENGERT DID NOT ACT IN SELF-DEFENSE WAS LEGALLY INSUFFICIENT AS A MATTER OF LAW."

VI

{¶ 11}  "THE EVIDENCE IN THIS CASE WEIGHED MANIFESTLY AGAINST CONVICTING SHALENE RENGERT."

{¶ 12}  We will address the assignments of error out of order for ease of discussion.

III, V, VI

{¶ 13} In her third assignment of error, appellant claims the trial court erred in instructing the jury in two respects: 1) that the evidence "may" show rather than "tends" to show that appellant acted in self-defense, and 2) that appellant had a duty to retreat.

{¶ 14} In her fifth assignment of error, appellant claims the evidence was insufficient to prove that she did not act in self-defense.

{¶ 15} In her sixth assignment of error, appellant claims the jury's rejection of her self-defense claim was against the manifest weight of the evidence.

{¶ 16} "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Crim.R. 30.

{¶ 17} It is not clear in the record whether appellant objected to the word change; appellant did not object to the inclusion of the duty to retreat instruction. T. at 848-853, 864-865, 907-908.

{¶ 18} An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978); Crim.R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that substantial rights were affected and the outcome of the trial clearly would have been different but for the error. *Long.* Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶ 19} The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Martens,* 90 Ohio App.3d 338, 629 N.E.2d 462 (3d Dist.1993). In order to find an abuse of discretion,

we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Jury instructions must be reviewed as a whole. *State v. Coleman,* 37 Ohio St.3d 286, 525 N.E.2d 792 (1988).

{¶ 20} Appellant makes a blanket argument that the errors were structural and not harmless, but does not elaborate on the law of structural error and how the errors constitute structural error.

{¶ 21} "Structural error" are those errors that " 'defy analysis by "harmless error" standards' because they 'affect[ ] the framework within which the trial proceeds, rather than simply [being] an error in the trial process itself.' " *State v. Fisher,* 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 9, quoting *Arizona v. Fulminante,* 499 U.S. 279, 309-310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). As stated by this court in *State v. Kerens,* 5th Dist. Fairfield No. 2020 CA 00011, 2021-Ohio-127, ¶ 33:

> In *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) the United States Supreme Court held that because the failure to properly instruct the jury is not in most instances structural error, the harmless-error rule of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 applies to a failure to properly instruct the jury, for it does not necessarily render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.

{¶ 22} In reviewing the record, we find the instructions did not render the trial so fundamentally unfair that it could not be a reliable vehicle for determining appellant's guilt or innocence. As structural error is not present in this case, we will proceed under an abuse of discretion and plain error analysis.

{¶ 23} Effective March 28, 2019, R.C. 2901.05 shifted the burden of self-defense to the prosecution to prove beyond a reasonable doubt that the accused did not use the force in self-defense. The offenses in this case occurred on May 5, 2018, prior to the statute change. This court has repeatedly stated the new version does not apply to offenses committed prior to the effective date. *See State v. Whitman,* 5th Dist. Stark No. 2019CA00094, 2019-Ohio-4140; *State v. Moore,* 5th Dist. Muskingum No. CT2019-0030, 2020-Ohio-342; *State v. Brooks,* 5th Dist. Richland No. 2019 CA 0104, 2020-Ohio-4123, *appeal accepted,* 160 Ohio St.3d 1517, 2020-Ohio-6834, 159 N.E.3d 1182. Nevertheless, the state in this case elected to carry the burden as mandated under the new statute, and we will proceed accordingly.

WORD CHANGE FROM "TENDS" TO "MAY"

{¶ 24} The Ohio Jury Instructions on self-defense tracks the following language set forth in R.C. 2901.05(B)(1):

> A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that *tends to support* that the accused person used the force in self-defense, defense of another, or defense of that person's

residence, *the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense,* defense of another, or defense of that person's residence, as the case may be. (Emphasis added.)

{¶ 25} The trial court instructed the jury as follows (T. at 899-900):

The defense is allowed to use deadly or non-deadly force in self defense. Evidence was presented that *may support* a finding the defendant used deadly or non-deadly force in self defense. *The State must prove beyond a reasonable doubt the defendant did not use deadly or non-deadly force in self defense.* (Emphasis added.)

{¶ 26} In her appellate brief at 16, appellant argues: "By explaining to the jury through its instructions that the evidence does not tend to support self-defense, it just 'may' support it, the trial court deviated from the legislatures (sic) decision to place the burden of self-defense on the state." We disagree. The trial court clearly instructed the jury that the state carried the burden to disprove self-defense and did not deviate from the intention of the statute.

{¶ 27} A lengthy discussion was held between the trial court and counsel over the jury instruction. T. at 848-853. The prosecutor sought to eliminate the first and second sentences of the instruction and just instruct on the burden of proof. T. at 848, 850. The

trial court denied the request, refusing to stray so far from the OJI, but decided to change "tends to support" to "may support," reasoning the following (T. at 851):

> I had the same thing when I read OJI, the same impression, which is when the jury instruction says 'evidence was presented that tends to support a finding that the defendant used non-deadly force or deadly force in self defense,' the 'tends to support' part could lead the jury to conclude that the Court is telling them that - - steering them to that direction. So that's my issue.

{¶ 28} "In a criminal case, it is not mandatory upon a trial court to give requested instructions to the jury verbatim, but if the requested instructions contain a correct, pertinent statement of the law and are appropriate to the facts they must be included, at least in substance, in the court's charge to the jury." *State v. Nelson,* 36 Ohio St.2d 79, 303 N.E.2d 865 (1973), paragraph one of the syllabus, *overruled in part on other grounds, State v. Fanning,* 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). We do not find the trial court's word change to be an abuse of discretion or prejudiced appellant in any way. The instruction was a correct, pertinent statement of the law.

DUTY TO RETREAT

{¶ 29} In instructing the jury on self-defense, the trial court instructed on both deadly force and non-deadly force. T. at 900-901. In instructing on deadly force, the trial court stated the following (T. at 900):

If you find that the defendant acted with deadly force, self defense means that, A, the defendant was not at fault in creating the situation giving rise to the stabbing of Thomas Rengert, and, B, the defendant had reasonable grounds to believe and an honest belief, even if mistaken, that she was in imminent or immediate danger of death or great bodily harm, and, C, the defendant did not violate any duty to retreat to avoid the danger and, D, the defendant used reasonable force.

{¶ 30} The trial court instructed on "duty to retreat" as follows (T. at 901-902):

The defendant had a duty to retreat if she, A, was at fault in creating the situation giving rise to the stabbing of Thomas Rengert, or, B, did not have reasonable grounds to believe and an honest belief that she was in imminent or immediate danger of death or great bodily harm or, C, have a reasonable means of escape from that danger other than by use of deadly force.

The defendant did not have a duty to retreat if, A, she retreated from the situation, a reasonable indicator [of] her intention to retreat from the situation and no longer participate in it, and, B, she then had reasonable grounds to believe and an honest belief that she was in imminent or immediate danger of death or great bodily harm, and, C, the only reasonable means of escape from that danger was by use of deadly force, even though she was mistaken as to the existence of that danger.

{¶ 31} Appellant argues as a resident of the home, she did not have a duty to retreat under R.C. 2901.09(B) which states the following:

For purposes of any section of the Revised Code that sets forth a criminal offense, a person who lawfully is in that person's residence has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence, and a person who lawfully is an occupant of that person's vehicle or who lawfully is an occupant in a vehicle owned by an immediate family member of the person has no duty to retreat before using force in self-defense or defense of another.

{¶ 32} Appellant was the victim's wife and together they lived in the home. Pursuant to R.C. 2901.09(B), otherwise known as the "Castle Doctrine," appellant did not have a duty to retreat from her home. *State v. Thomas,* 77 Ohio St.3d 323, 328, 673 N.E.2d 1339 (1997) ("there is no duty to retreat from one's own home before resorting to lethal force in self-defense against a cohabitant with an equal right to be in the home"). The trial court failed to so instruct the jury and appellant never requested a Castle Doctrine instruction and/or never objected to its omission. Under plain error review, did the error affect appellant's substantial rights and would the outcome of the trial clearly have been different but for the error?

{¶ 33} Under recently amended R.C. 2901.05 which appellee elected to follow, the state was required to disprove self-defense by proving appellant "(1) was at fault in

creating the situation giving rise to the affray, OR (2) did not have a bona fide belief that [s]he was in imminent danger of death or great bodily harm for which the use of deadly force was [her] only means of escape, OR (3) did violate a duty to retreat or avoid the danger." *State v. Carney,* 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31. *Accord State v. Staats,* 5th Dist. Stark No.2019CA00181, ¶ 28. The state need only disprove one of the elements of self-defense beyond a reasonable doubt at trial to sustain its burden. *Carney* at ¶ 31. Because prong 3 does not apply, we will review prongs 1 and 2.

{¶ 34} As stated by this court in *State v. Williams,* 5th Dist. Stark No. 2019CA00188, 2021-Ohio-443, ¶ 19:

> In reviewing a sufficiency of the evidence challenge involving self-defense, we must view the evidence in a light most favorable to the State, and determine whether any rational trier of fact could have found the State disproved at least one of the elements of self-defense beyond a reasonable doubt. *State v. Davis*, 10th Dist. Franklin No. 19AP-521, 2020-Ohio-4202, ¶ 27; *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶51.

{¶ 35} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must

be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). Self-defense claims are generally an issue of credibility which is determined by the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990).

{¶ 36} Earlier in the day prior to the incident, appellant testified because she was suspicious of the suicide shooting death of Thomas's former wife, she obtained a police report of the incident. T. at 499-502, 504-505, 517. After reading the report, she determined Thomas's former wife could not have pulled the trigger herself and he did it which made her scared for her own life. T. at 520, 686. A detective on the case testified on rebuttal he reviewed the report and when asked if it seemed reasonable to him that someone could read the report and conclude that Thomas had killed his former wife, he responded, "[n]ot at all." T. at 778. We note appellant's fear was coupled with her knowledge of Thomas tracking her cell phone and vehicle for her whereabouts. T. at 480-485.

{¶ 37} After reading the report, appellant started packing her belongings in order to leave Thomas. T. at 520-521. She called her former boyfriend and current boss, Ben Lehner, to help "get my stuff out of there." *Id.* While packing, appellant discovered weapons in the home which frightened her. T. at 521-523. She called the police who arrived and removed the weapons at her request. T. at 524-525. She inquired as to whether she could obtain "a temporary protection, restraining order," but learned she could not get one that day. T. at 525-526.

{¶ 38} When Thomas returned home after work, he observed appellant's belongings in Ben's vehicle. T. at 529. He noticed his shotgun was missing so he asked

appellant about its location.  T. at 97-98, 528-529.  She stated she did not know where it was.  T. at 529.  Thereafter, Ben left and Thomas and appellant went to his parents' place and went fishing and shooting together.  T. at 59-60, 532-535, 619.  Afterwards, several family members went out to a sports bar.  T. at 64, 535.  According to Ben, appellant called him and asked him to come to the bar; appellant admitted to calling him, but told him to stay away.  T. at 231, 537.  Regardless, Ben arrived at the bar.  T. at 537-538.  Appellant was asked to leave the bar by management and "is not welcome back at our establishment."  T. at 66, 215-216.  She left with Ben who eventually took her back to her apartment so she could confront Thomas with the police report and question him about the suicide.  T. at 233, 237, 540-544.  Thomas agreed to talk, but not in front of Ben, so appellant asked Ben to leave and he did.  T. at 73, 241, 546-547, 625.  The couple talked/argued and Ben returned about a half hour later to check on her.  T. at 241-242, 547-550, 629.  Appellant and Thomas continued talking/arguing in front of Ben.  T. at 243.  Then, according to appellant, Thomas punched her twice in the face, but Ben did not see it as he was in the kitchen.  T. at 551-553.  Appellant did not yell for Ben to help or call the police or leave, she voluntarily stayed.  T. at 634.  Ben testified Thomas was always quiet, he was not yelling.  T. at 239.  Ben never saw Thomas strike appellant.  T. at 243, 258.

{¶ 39} Again, appellant asked Ben to leave, but not to go far.  T. at 246, 556, 635.  The front door was locked and appellant and Thomas went upstairs to their bedroom.  T. at 77, 558, 607-608.  Only two people were witness to what happened in the bedroom prior to the stabbing, appellant and Thomas.

{¶ 40} Thomas testified after they went upstairs, appellant lit a candle, turned off the lights, and came over to him.  T. at 78.  As he laid back on the bed, she straddled him, "[a]nd she took her hand across my groin area * * * [a]nd she was having difficulty getting my belt off.  And then the next thing I know I was - - I got stabbed in the leg."  T. at 78-79.  Thomas grabbed her wrist and took the knife.  T. at 80.  He then jumped up and ran downstairs out the back door to the neighbor's house and called the police.  T. at 81-82.  He denied at any point punching appellant.  T. at 82, 812.

{¶ 41} Appellant testified after she went upstairs, Thomas threw her on the bed and explained, "[w]e've done things like that before.  It wasn't necessarily something to freak me out."  T. at 558.  He then got on top of her and punched her and she blacked out.  T. at 559.  She then testified to the following (*Id.*):

> Eventually I asked him if he felt like a fucking man yet.  And he said, "Yeah" and wanted to make love to me.  And at that point, I knew that I needed to do something to where I could get easy access out of there if I needed it.
>
> And he reached down and put his hand on my throat, not like squeezing or violently, like, choking me.  It was just he had his hand on my throat.  And at that point, he told me - - We reversed.  I told him to let me on top.
>
> Q. Why did you do that?

A. I wanted access so I'd be able to run. And I asked him if he wanted me to do it because of his back. Do I need to go into detail about that because I - -

Q. No.

A. Thank you. And he said, "You're right. I did kill her, and your next" because he had a fist. And I had a kitchen knife, and I grabbed it. I poked him in the leg with it and started screaming. And then he got up, and he ran out the bedroom door. And that's the last time I saw him.

{¶ 42} Earlier in the day, appellant had hidden the kitchen knife under the mattress. T. at 605, 610. She did so because she was "terrified of my husband." T. at 606.

{¶ 43} Numerous times, Ben asked appellant to leave with him, but she refused. T. at 225, 228, 237, 546, 614, 636.

{¶ 44} Appellant testified to being terrified of Thomas, yet she confronted him with the police report of his former wife's suicide, voluntarily went fishing and shooting with him, stayed with him against the numerous urgings of Ben to leave with him, asked Ben to leave on two occasions so she could be alone with Thomas, went upstairs to the bedroom with Thomas, taunted him after coming to, straddled him, and then reached for a knife she had previously hidden under the mattress and stabbed him. Thomas was unarmed while appellant had a knife.

{¶ 45} In *State v. Smith,* 8th Dist. Cuyahoga No. 109221, 2021-Ohio-1185, the defendant claimed self-defense after stabbing and killing the victim who she had fought with the evening before. At the time of the killing, the victim was exiting a store and not

brandishing a weapon. The defendant argued she was not at fault in creating the situation because the victim injured her in the earlier incident. The *Smith* court rejected this argument and stated the following at ¶ 23:

It is a well-settled rule that, before a person can avail himself of the plea of self-defense, the defendant, in the least and consistent with her own safety, must avoid creating the situation in which the necessity of taking another life arises. If one has reason or belief of an imminent attack in a manner that threatens bodily injury or death, the defendant must avoid the attack if it is possible to do so, and the right of self-defense does not arise unless the defendant is reacting to another's aggression. In general, voluntarily participating in or initiating a confrontation, especially for purposes other than protection, cannot justify or excuse the killing of another on the basis of self-defense. Smith acted inconsistent with her claims of self-defense.

{¶ 46} In the case sub judice, if appellant had reasonable grounds to believe and an honest belief that she was in imminent or immediate danger of death or great bodily harm, she could have left the apartment. She voluntarily went upstairs with Thomas and if her testimony is believed, she taunted him after she blacked out and came to. In switching positions on the bed, instead of bolting for the door, she got on top of Thomas and straddled him. At the time of the stabbing, Thomas was not harming her; she did not

stab him to free herself of his aggression. Her actions were inconsistent with her claims of self-defense.

{¶ 47} Although appellant was entitled to a Castle Doctrine instruction, we find appellant has not demonstrated that any such error affected her substantial rights and the outcome of the trial clearly would have been different but for the error.

{¶ 48} Sufficient evidence was presented for the state to prove, beyond a reasonable doubt, that appellant was at fault in creating the situation giving rise to the affray and did not have a bona fide belief that she was in imminent danger of death or great bodily harm for which the use of deadly force was her only means of escape.

{¶ 49} There is nothing in the record to suggest the jury instruction resulted in a manifest miscarriage of justice of that the jury lost its way. The jury simply did not find appellant's claim of self-defense to be credible.

{¶ 50} Upon review, we do not find an abuse of discretion or plain error in relation to the complained of jury instructions. We further do not find the evidence to be insufficient and the jury's decision to be against the manifest weight of the evidence regarding the self-defense claim.

{¶ 51} Assignments of Error III, V, and VI are denied.

I

{¶ 52} In her first assignment of error, appellant claims the trial court abused its discretion in excluding three witnesses, one who would have testified to Thomas's reputation for untruthfulness, one who would have testified to Thomas's reputation for violence, and her expert on battered woman syndrome. We disagree.

{¶ 53} The admission or exclusion of relevant evidence lies in a trial court's sound discretion. *State v. Sage,* 31 Ohio St.3d 173, 510 N.E.2d 343 (1987); *Blakemore, supra.*

{¶ 54} In general, "[a]ll relevant evidence is admissible" and "[e]vidence which is not relevant is not admissible." Evid.R. 402. "Relevant evidence" "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Evid.R. 403 states the following:

> **(A) Exclusion mandatory.** Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
>
> **(B) Exclusion discretionary.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.

### REPUTATION FOR UNTRUTHFULNESS

{¶ 55} Appellant sought to introduce the testimony of Terri Houlton, the sister of Thomas's former wife, who would testify to his reputation for untruthfulness under Evid.R. 608. Said rule governs evidence of character and conduct of witness and states the following in pertinent part:

> **(A) Opinion and Reputation Evidence of Character.** The credibility of a witness may be attacked or supported by evidence in the

form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

{¶ 56} Appellant argues the rule does not limit the method of attack. She argues Thomas's truthfulness was attacked during his cross-examination and through the testimony of other witnesses who contradicted his statements which falls under "otherwise," and therefore she should have been permitted to present the testimony of Ms. Houlton.

{¶ 57} In not permitting the testimony, the trial court noted Thomas's credibility was already attacked on cross-examination "and so I think the way the rule reads is that then it would go back to the State to prove that he's truthful." T. at 184.

{¶ 58} We agree with the trial court's analysis. Evid.R. 608(A)(2) is for rehabilitation purposes once credibility is attacked and is not intended to be used to present additional testimony on a witness's reputation for untruthfulness.

{¶ 59} We do not find the trial court abused its discretion in not permitting Ms. Houlton's testimony.

REPUTATION FOR VIOLENCE

{¶ 60} Appellant sought to introduce the testimony of Chelsea Russell, the daughter of Thomas's former wife and Thomas's stepdaughter, who would testify to his

reputation for violence under Evid.R. 405.   Said rule governs methods of proving character and states the following in pertinent part:

> **(A) Reputation or Opinion.** In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
>
> **(B) Specific Instances of Conduct.** In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

{¶ 61} Appellant argues, quoting from *State v. Barnes,* 94 Ohio St.3d 21, 24, 759 N.E.2d 1240, "[i]t is undisputed that a defendant can introduce character evidence by reputation or opinion testimony under Evid.R. 405(A)" and therefore she should have been permitted to present the testimony of Ms. Russell.

{¶ 62} The state objected to this testimony on relevancy grounds under Evid.R. 404.  Said rule governs character evidence and states the following in pertinent part:

> **(A) Character Evidence Generally.** Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, subject to the following exceptions:

(2) *Character of Victim*. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable.

{¶ 63} The state argued the cited rule focuses on evidence of a "pertinent trait of character of the victim" and violence is not a pertinent trait relating to appellant's claim of self-defense; therefore, the testimony was properly excluded.  T. at 175-176.  In support of its position, appellee cites the cases of *Barnes, supra, State v. Hale,* 119 Ohio St.3d 118, 2008-Ohio-3426, and *State v. Galloway,* 5th Dist. Delaware No. 15 CAC 11 0089, 2016-Ohio-7767.  We note these cases focus on Evid.R. 405(B), methods of proving character, and not relevancy under Evid.R. 404(A).  In *Barnes* at 24, the Supreme Court of Ohio stated the following:

Although a victim's violent propensity may be *pertinent* to proving that he acted in a way such that a defendant's responsive conduct satisfied the elements of self-defense, no element *requires* proof of the victim's character or character traits.  A defendant may successfully assert self-defense without resort to proving *any* aspect of a victim's character. (Emphasis sic.)

{¶ 64} The trial court reviewed this language and the cited cases and acknowledged that although they dealt with specific instances of conduct under Evid.R. 405(B), it agreed with the following argument by the state (T. at 189):

And it defines the word pertinent as limited by the elements of the offenses, for the pertinent defense in that case. So you can't - - general character evidence is not pertinent in a self defense case. General character evidence of violence is not pertinent to any of the elements. That's what Barnes stands for. So whether it's general or specific instances of conduct, it's just not admissible under those rules.

{¶ 65} Appellant sought to present the testimony "just simply for the fact that he has a * * * reputation for violence." T. at 180. The testimony was not intended to prove Thomas was the aggressor or appellant's state of mind, or to rebut testimony of the peacefulness of the victim. Although defense counsel stated if her case-in-chief presented "testimony that suggests that he was actually the first aggressor, then I think - - then I think it does apply; and at that point, I will be re-asking to bring it in." T. at 191. The issue was never brought up again except to proffer Ms. Russel's testimony. The testimony did not go to a "pertinent trait of character of the victim," but was propensity evidence prohibited by Evid.R. 404(A): "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion."

{¶ 66} We do not find the trial court abused its discretion in not permitting Ms. Russell's testimony.

BATTERED WOMAN EXPERT

{¶ 67} Appellant claims the trial court erred in excluding her expert on battered woman syndrome from testifying without any reference to anything in the record.

{¶ 68} At the conclusion of appellant's testimony, the prosecutor asked if the expert on battered woman syndrome could be released because "there's been no evidence that would support battered woman syndrome testimony in this case with regard to this incident or, frankly, anything before it." T. at 564. The trial court asked defense counsel, "What's the evidence of battered woman syndrome?" T. at 565. Defense counsel answered, "I honestly don't really care about it. I'll go for self defense." *Id.* The trial court then released the expert witness and a lunch break was taken. T. at 565-566.

{¶ 69} After the recess, the following discussion was held between the trial court and defense counsel (T. at 566-567):

THE COURT: * * * Is there anything we need to talk about before they come back?

MS. CAMPBELL: I'd like to formally preserve the excusing of my expert and base that on the motion that's already filed in the record in the trial court below. Thank you.

THE COURT: That's fine. You told me - - I let him go based upon the fact that you told me that was fine, that you intend to proceed with a - - did not intend to proceed with the battered woman syndrome defense.

MS. CAMPBELL: Judge, I was arguing that he should stay, and you said not. And honestly, I was just exhausted. So - -

THE COURT: Okay.

MS. CAMPBELL: So I just made that comment. But I do need to make - - but I don't want to argue about it.

THE COURT: Okay.

MS. CAMPBELL: I have no intention to argue, which is why I was asking about the file. I might not be the appellate attorney.

THE COURT: It's preserved.


{¶ 70} A review of the discussion held between the trial court and counsel does not show that the trial court said the expert should not stay. The trial court was in the middle of entertaining argument on the issue in order to make a decision when defense counsel abandoned the defense.

{¶ 71} Appellant cannot object to a ruling after inducing the trial court to make such ruling. *Lester v. Leuck,* 142 Ohio St. 91, 50 N.E.2d 145 (1943), paragraph one of the syllabus. In addition, no evidence was presented of any prior violence between the parties to justify a battered woman syndrome defense.

{¶ 72} Upon review, we find the trial court did not abuse its discretion in excluding the three witnesses.

II

{¶ 73} In her second assignment of error, appellant claims the trial court abused its discretion in permitting appellee to put on rebuttal witnesses who did not offer rebuttal testimony.  We disagree.

{¶ 74} "Rebutting evidence is that given to explain, refute, or disprove new facts introduced into evidence by the adverse party; it becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence. * * * It is within the trial court's discretion to determine what evidence is admissible as proper rebuttal." *State v. McNeill,* 83 Ohio St.3d 438, 446, 700 N.E.2d 596 (1998). *Blakemore, supra*.

{¶ 75} Appellee presented two rebuttal witnesses, Detective Sean Franks and Thomas.  As to Detective Franks, appellant does not cite to any specific testimony, but just makes a general argument that he was not "brought to rebut any new fact introduced" in her case-in-chief.  In our review, we find the questions posed to Detective Franks on rebuttal pertained to issues that arose from appellant's testimony.

{¶ 76} As to Thomas, appellant argues he was not called to counter a new fact raised in her case-in-chief, but "to provide an alternative cause" for how she received her black eye.  Appellant argued both Thomas and Ben Lehner testified in the state's case-in-chief and were not questioned about the origin of the black eye.  The reason they were not questioned about the causation of the black eye was because it was not raised until appellant testified that Thomas had hit her causing the black eye.  In the state's case-in-chief, Thomas denied ever hitting appellant and Ben stated he never saw Thomas hit appellant.  Thomas's testimony was proper rebuttal.

{¶ 77} Upon review, we find the trial court did not abuse its discretion in permitting the rebuttal testimony.

{¶ 78} Assignment of Error II is denied.

IV

{¶ 79} In her fourth assignment of error, appellant claims cumulative errors denied her right to a fair trial.  We disagree.

{¶ 80} In *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, the Supreme Court of Ohio recognized the doctrine of cumulative error.  However, where we have found the trial court did not err, cumulative error is inapplicable.  *State v. Carter*, 5th Dist. Stark No. 2002CA00125, 2003-Ohio-1313, ¶ 37.

{¶ 81} Other than the lack of a Castle Doctrine instruction which we have determined not to constitute plain error, we have found no error in appellant's preceding assignments of error; therefore, the doctrine of cumulative error is inapplicable.

{¶ 82} Assignment of Error IV is denied.

{¶ 83} The judgment of the Court of Common Pleas of Delaware County, Ohio is hereby affirmed.

By Wise, Earle, J.

Wise, John, P.J. and

Baldwin, J. concur.


EEW/db