[Cite as *State v. Gaston*, 2013-Ohio-2331.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98904**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JOSEPH GASTON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-555107

**BEFORE:** Keough, J., S. Gallagher, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 6, 2013

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square
Suite 1616
Cleveland, Ohio 44113-1901

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: James Hofelich
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Joseph Gaston, appeals from the trial court's judgment, rendered after a jury verdict, finding him guilty of felonious assault and sentencing him to two years incarceration. For the reasons that follow, we affirm.

## I. Background

{¶2} Gaston was charged with one count of felonious assault in violation of R.C. 2903.11(A)(1) (knowingly causing serious physical harm to the victim), and one count of felonious assault in violation of R.C. 2903.11(A)(2) (knowingly causing or attempting to cause serious physical harm by means of a deadly weapon or dangerous ordnance). He pleaded not guilty.

{¶3} At trial, the victim, John Glawacky, testified that he lives at the Riverview Towers apartments in Cleveland, Ohio. Glawacky said that on October 1, 2011, at approximately 2:30 p.m., he was watching TV in the recreation room of the Riverview Apartments while he was waiting to play the next game of pool. Gaston was playing pool with Arline Gardner; Edward Coleman was also near the pool table.

{¶4} Glawacky noticed that the lights were repeatedly going on and off at the end of the room by the pool table and that Gaston was arguing with someone. Glawacky then saw Gaston pick two balls off the table and start walking into the hallway. Glawacky got up and, following Gaston into the hallway, asked him where he was going with the balls

and then told him to put the balls back. Glawacky testified that Gaston responded with vulgarity and then, after Glawacky said, "Okay, let's go back in the pool room," Gaston hit him two times in the face with one of the pool balls. As a result, Glawacky's glasses were broken, he lost a tooth and chipped several teeth, and his nose gushed blood. He was later treated at the hospital, where he received several stitches in his mouth.

{¶5} Arline Gardner testified that she was playing pool with Gaston, with the lights out, when Edward Coleman, another Riverview Towers resident, came in and turned the lights on. Coleman and Gaston then began arguing about the lights; Gaston kept turning them off and Coleman kept turning them on. Gardner said that Gaston and Coleman were "cussing each other out" and finally, Gaston took two balls off the pool table. Gardner said that she then stepped outside the pool room for a few minutes and waited by the door. She said that she heard arguing in the pool room and when she returned a few minutes later, she saw that Glawacky's nose was bleeding and Gaston had the pool balls in his hands.

{¶6} Edward Coleman testified that he went to the recreation room that day to shoot pool. When he saw that Gaston and Gardner were playing pool in the dark, he turned the lights on but Gaston quickly turned them off again. Coleman said that he and Gaston turned the lights on and off for several minutes until Gaston "got mad," took two pool balls off the table, and went into the hall. Coleman testified that Glawacky, who had been watching TV, then went in the hall, told Gaston he had the next game, and asked him why he was taking the balls. Coleman said that he then heard a "clunk-like sound"

of someone getting hit. Coleman went in the hall, where he saw Glawacky bleeding. He testified that Gaston then hit Glawacky again with "an upper cut with the pool ball."

{¶7} CMHA Police Officer Aaron Reason testified when he and his partner, CMHA Detective Kyle White, arrived at the Riverview Towers a short time later, Gaston, who was holding two pool balls in his hands, was standing in the lobby next to a security officer; Glawacky was sitting in a chair bleeding.

{¶8} Detective White testified that he viewed surveillance camera footage from a camera in the pool room but "there really wasn't anything to see." White testified that the figures on the film were grainy, it was impossible to make out who the people on the footage were, and he could not "see anything that actually took place." White further testified that although there is a surveillance camera in the hallway at Riverview Towers outside the pool room, the film footage from that camera did not show the area of the hallway where the alleged events took place.

{¶9} Gaston's version of the events differed from that of the state's witnesses. He testified that when he picked the pool balls off the table, he told Coleman that he was going to get the security guard at the end of the hall to "straighten this out." According to Gaston, as he and Coleman continued arguing in the hallway, he heard someone yell, "you ain't nothing but a snitching mother-fucking bitch." Gaston said that he turned to see who had made the comment and saw Glawacky. Gaston then told Glawacky, "come say that to my face."

{¶10} Gaston testified that he put the pool ball from his right hand in his coat pocket as he watched Glawacky approach. Gaston said that Glawacky, who appeared to be high, then ran into him with his body. Gaston said he then hit Glawacky in the jaw with his right hand; he denied that he was holding a pool ball in his hand when he hit Glawacky. According to Gaston, Glawacky fell to the ground, then got up again, and put his hands up to fight. Gaston said he then hit Glawacky again and "busted his mouth open."

{¶11} At the close of the state's evidence, Gaston moved for a mistrial because the state had not turned over the surveillance camera footage to the defense. The trial court denied Gaston's motion for a mistrial, as well as his Crim.R. 29 motions for acquittal. The court also denied Gaston's request for a jury instruction on self-defense.

{¶12} The jury subsequently found Gaston guilty of felonious assault in violation of R.C. 2903.11(A)(1) (Count 1) and not guilty of felonious assault in violation of R.C. 2903.11(A)(2) (Count 2). The trial court sentenced him to two years incarceration.

## II. Analysis

A. Self-defense Instruction

{¶13} In his first assignment of error, Gaston argues that the trial court erred when it denied his request for an instruction on self-defense.

{¶14} Self-defense is an affirmative defense, and the burden of going forward with evidence of that defense and the burden of its proof is on the accused. R.C. 2901.05(A); *State v. Jackson*, 22 Ohio St.3d 281, 490 N.E.2d 893 (1986). A trial court does not err

by refusing to instruct on self-defense when the evidence does not support the defense. *State v. Poole*, 8th Dist. No. 78618, 2001 Ohio App. LEXIS 3020 (July 5, 2001).

{¶15} To prove self-defense involving the use of non-deadly force,[1] the accused must show by a preponderance of the evidence that (1) he was not at fault in creating the situation giving rise to the altercation; and (2) he reasonably believed that he was in imminent danger of bodily harm; and (3) his only means to protect himself from such danger was by the use of force not likely to cause death or great bodily harm. *State v. Hunt*, 8th Dist. No. 94534, 2011-Ohio-92, ¶ 20; *Cleveland v. Welms*, 169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 1125, ¶ 19 (8th Dist.). If the defendant fails to prove any one of the elements by a preponderance of the evidence, he has failed to show that he acted in self-defense. *Hunt*, citing *Jackson*, 22 Ohio St.3d at 284.

{¶16} The trial court refused to give the self-defense instruction because it found that Gaston was at fault in creating the confrontation when he took the pool balls from the table. Gaston contends that the trial court erred in concluding that he was at fault because the trial court erroneously focused on what caused the argument, rather than on who was the first to engage in the physical altercation. Gaston contends that Glawacky

---

[1]Count 2 of the indictment charged Gaston with causing or attempting to cause physical harm to Glawacky by means of a deadly weapon or dangerous ordnance, to wit: pool balls. Nevertheless, we consider Gaston's assignment of error under a non-deadly force analysis because he testified that he did not have a pool ball in his hand when he hit Glawacky and the jury found him not guilty of Count 2. Although the trial court erred in applying the deadly force analysis for self-defense, the trial court's error was harmless because, as discussed below, Gaston was at fault in creating the situation that gave rise to the altercation. Thus, under either analysis, he did not show that he acted in self-defense.

started the fight when he threw himself into him, and he had no choice but to defend himself. Therefore, Gaston contends, the trial court should have instructed the jury on self-defense. We are not persuaded.

> [T]he first element of a self-defense claim does not require in all situations that the actor must have refrained from throwing the first punch. Rather, this element provides that the actor must not be at fault in creating the situation that gave rise to the affray. This concept is broader than simply not being the immediate aggressor. A person may not provoke an assault or voluntarily enter an encounter and then claim a right of self-defense.

*State v. Nichols*, 4th Dist. No. 01CA2775, 2002-Ohio-415, citing *State v. Vines*, 8th Dist. No. 33871, 1975 Ohio App. LEXIS 6280 (May 29, 1975); *State v. Gibbs*, 11th Dist. No. 9-018, 1982 Ohio App. LEXIS 11826 (June 28, 1982); *State v. Sanchez*, 8th Dist. No. 50566, 1986 Ohio App. LEXIS 6536 (Apr. 24, 1986). *See also State v. Gillespie*, 172 Ohio App.3d 304, 2007-Ohio-3439, 874 N.E.2d 870 (2d Dist.), ¶ 17 (the first prong requires a defendant to show that he did "not engage in such wrongful conduct toward his assailant that the assailant was provoked to attack the defendant as he did").

{¶17} Here, even if Gaston's version of events is to be believed, Gaston's own testimony demonstrates that he, and not Glawacky, was at fault in creating the situation that gave rise to the altercation. Gaston testified that he took the pool balls off the table so no one else could play pool. He further testified that when Glawacky followed him into the hallway and allegedly called him a "snitching mother-fucking bitch," he told Glawacky to "come say that to my face" and then waited for Glawacky to walk down the hall toward him. Although under Gaston's version of the events he did not throw the first punch, it is apparent that he was at fault in provoking Glawacky. By his own

admission, Gaston sought to engage Glawacky, even though he could have simply turned around and walked toward the guard station, where he had allegedly been going when Glawacky spoke to him. Gaston was at fault for creating the situation and, thus, was not entitled to an instruction on self-defense.

{¶18} The first assignment of error is therefore overruled.

B. Video Surveillance Footage

{¶19} In his second assignment of error, Gaston contends that he was denied due process and a fair trial because the state allowed the destruction of the video surveillance footage from the pool room.

{¶20} Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the state must disclose material evidence favorable to the defendant. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Due Process Clause further protects a criminal defendant from being convicted where the state has failed to preserve materially exculpatory evidence or destroys in bad faith potentially useful evidence. *State v. Farris*, 2d Dist. No. 2003 CA 77, 2004-Ohio-5980, ¶ 20.

{¶21} Gaston contends that the video surveillance tape from the pool room was materially exculpatory, and thus the state's destruction of the tape violated his due process rights, warranting reversal of his conviction. We disagree.

{¶22} To be materially exculpatory, "'evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably

available means.'" *State v. Colby*, 11th Dist. No. 2002-P-0061, 2004-Ohio-343, ¶ 11, quoting *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

**{¶23}** Here, Det. White testified that the film footage was "grainy," and when he viewed the film, it was impossible to make out who the people on the footage were or "anything that actually took place." In light of Gardner's, Coleman's, and Gaston's testimony that Gaston hit Glawacky twice in the face and that Glawacky never touched Gaston, we fail to see how video footage that is too grainy to show what actually happened could be considered materially exculpatory. Moreover, Gaston's argument that the lack of film footage undermined his self-defense claim is without merit because, as discussed above, he was at fault in creating the situation that led to the altercation. Accordingly, we find that the state did not violate Gaston's due process rights by not preserving the video surveillance footage and, accordingly, overrule the second assignment of error.

**{¶24}** Affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

SEAN C. GALLAGHER, P.J., and
EILEEN T. GALLAGHER, J., CONCUR