[Cite as *State v. Johnson*, 2022-Ohio-2577.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,              :

                                    No. 110673

    v.                               :

CURTIS L. JOHNSON, JR.                  :

    Defendant-Appellant.             :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 28, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-647441-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Kristin Karkutt, Assistant Prosecuting Attorney, *for appellee.*

Michael P. Maloney, *for appellant.*

SEAN C. GALLAGHER, A.J.:

{¶ 1} Curtis Johnson appeals multiple convictions arising from a shooting incident outside a local establishment in which Johnson was found guilty of murdering Catera Fowler. For the following reasons, we affirm.[1]

{¶ 2} Johnson and his codefendant Eric White attended a live musical performance at Legacy Nightclub, located on the corner of E. 103rd Street and Union Avenue in Cleveland, Ohio. Before the performance could begin, Johnson and White engaged in a physical fight. Fowler was with White's group and participated in the fisticuffs. The club cleared the building. Johnson exited the club, walked back to his car, and removed his sweatshirt in anticipation of the continued belligerence. Once outside, Johnson waited for White to exit the building.

{¶ 3} As White exited with Fowler nearby, Johnson approached White in a manner suggesting he intended to continue fighting. White reached for and brandished a firearm with Fowler attempting to keep him from doing so. At that time, another unidentified individual fired shots into the air from the corner of the street. White and Fowler began running south down E. 103rd Street, past Johnson's car.

{¶ 4} At the same time, Johnson took refuge behind his car, which was parked on E. 103rd Street, and retrieved his own firearm. Video depicts Johnson ducking behind the car, but it is unclear whether shots were actually fired in his

---

[1] After lengthy consideration of the underlying issues, this matter was assigned to this writer on June 13, 2022.

direction. No one claims that any bullet defects existed in his vehicle. Johnson claims that White was chasing and shooting at him during this time.

{¶ 5} Regardless, as White and Fowler ran past Johnson, heading south away from Johnson, Johnson began firing several shots at the fleeing couple. It was only after White and Fowler continued south that Johnson first began to fire in their direction. Although White and Fowler were no longer within the vantage point of the video camera, the state relied on the circumstantial evidence provided by the mechanism of Fowler's death. The fatal shot struck Fowler in the lower back, with evidence demonstrating that the shot came from Johnson's firearm. The bullet travelled through Fowler's body, exiting Fowler's upper chest — meaning the bullet travelled at an upward trajectory, having been fired from a lower vantage point.

{¶ 6} There were other unidentified shooters on the street, but according to the state's evidence, those other shooters fired their weapons indiscriminately into the air.

{¶ 7} White and Johnson were separately charged and proceeded to trial for the murder of Fowler. Before Johnson's trial, White was acquitted. Johnson's jury trial resulted in convictions for murder in violation of R.C. 2903.02(A), along with a three-year firearm specification; felonious assault in violation of R.C. 2903.11(A)(2), a qualifying felony offense, along with a three-year firearm specification; discharge of a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3), along with a three-year firearm specification; and having weapons while under disability in violation of R.C. 2923.13(A)(2). The trial court

imposed the underlying terms to be served concurrently but imposed two of the firearm specifications to be served consecutive to each other and the underlying sentences, for a stated prison term of 21 years to life imprisonment.[2]

{¶ 8} In this case, Johnson claims that (1) the trial court erred by refusing to give a self-defense jury instruction, and (2) his convictions, based on the murder of Catera Fowler, who by all accounts attempted to prevent the fight between Johnson and White from escalating outside the establishment and was shot while she and White were running away from Johnson, are based on insufficient evidence.

{¶ 9} In the first assignment of error, Johnson claims that the trial court "mistakenly" shifted the burden of proving self-defense to him because in denying his motion to instruct the jury on the elements of self-defense, the trial court stated

---

[2] Although the offenses were committed after the effective date of R.C. 2929.144 and 2929.14(A)(1)(a) and (A)(2)(a), Johnson was sentenced under what appears to be the definite sentencing structure predating the Reagan Tokes Law. Further, although the trial court imposed the three-year sentences on the firearm specifications for the felonious assault and murder to be served consecutive to each other and the underlying sentences, it also confusingly noted that the sentences on the firearm specifications attendant to the felonious assault and murder charges are also concurrent. It appears the journal entry is incorrect, since at the sentencing hearing the trial court indicated that it would not impose the sentence on the firearm specification attendant to the wrongful discharge of a weapon count. The failure to impose a sentence upon a firearm specification does not deprive this court of a final, appealable order. *State ex rel. Rodriguez v. Barker*, 158 Ohio St.3d 39, 2019-Ohio-4155, 139 N.E.3d 885, ¶ 10, citing *State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, 945 N.E.2d 498, and *State ex rel. Jones v. Ansted*, 131 Ohio St.3d 125, 2012-Ohio-109, 961 N.E.2d 192. Since neither party has raised any issues with the sentencing, we simply note the incongruity. App.R. 16(A)(7); *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19, quoting *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part) ("'[A]ppellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them.'").

that the defendant must introduce "sufficient evidence" of self-defense in order to warrant the giving of the instruction. Johnson claims the trial court's use of that language demonstrated that the court placed the burden of proof, rather than the burden of production, on Johnson. The trial court, however, relied on the language this court instructed it to use.

{¶ 10} In order

> [t]o determine whether the defendant satisfied his burden of production, the court must consider whether the defendant *presented sufficient evidence* that tends to support that he used force in self-defense. "Placed in context, the phrase 'tends to support' does not connote that a new standard should apply to the determination of whether a defendant is entitled to a self-defense instruction. In order for evidence that 'tends' to support an affirmative defense, it must be *sufficient* to raise a question in the mind of a reasonable juror, as is already required under the existing standard set forth in [*State v.*] *Melchior*[, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978)]." *State v. Tolle*, 4th Dist. Adams No. 19CA1095, 2020-Ohio-935, ¶ 24.

(Emphasis added.) *State v. Davidson-Dixon*, 2021-Ohio-1485, 170 N.E.3d 557, ¶ 19 (8th Dist.). The jury instruction is warranted only if there is conflicting evidence on the elements of self-defense. *Id.* at ¶ 20, citing *State v. Stephens*, 2016-Ohio-384, 59 N.E.3d 612, ¶ 19, and *State v. Hill*, 8th Dist. Cuyahoga No. 60736, 1992 Ohio App. LEXIS 3764, 3 (July 16, 1992). "However, 'if the evidence generates only a mere speculation or possible doubt, the evidence is *insufficient* to raise the affirmative defense, and submission of the issue to the jury will be unwarranted.'" (Emphasis added.) *Id.*, quoting *Melchior* at 20. The trial court used the correct analysis in determining whether Johnson presented sufficient evidence of every element of self-defense, and Johnson concedes that *Davidson-Dixon* controls. App.R. 16(A)(7);

*Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, at ¶ 19, quoting *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part).

{¶ 11} Johnson's claim is, therefore, misplaced.  The trial court applied the appropriate analysis to determine whether Johnson had demonstrated the necessity of charging the jury with the law on self-defense.  The trial court recited the correct analysis to determine whether Johnson presented sufficient evidence to warrant the giving of the self-defense jury instruction, and that analysis did not shift the burden of proving self-defense at trial to Johnson.

{¶ 12} Although Johnson claims that the trial court erred because the undisputed evidence sufficiently demonstrates that he acted in self-defense, and thus according to Johnson he has presented sufficient evidence to at least warrant the giving of the jury instruction, he does so solely based on the fact that White punched him inside the club and brandished and possibly discharged the firearm at the beginning of the altercation outside.  That alone is insufficient to demonstrate sufficient evidence to warrant the jury to consider the affirmative defense at trial.

{¶ 13} The undisputed evidence demonstrates that Johnson waited for White to exit the building and approached White with the intent to rekindle the earlier fight until White brandished a firearm — the evidence the trial court and Johnson discussed as being relevant to the jury charge question.  Johnson's conduct cannot support a self-defense claim.  *State v. Smith*, 2021-Ohio-1185, 169 N.E.3d 1014, ¶ 23 (8th Dist.) ("voluntarily participating in or initiating a confrontation,

especially for purposes other than protection, cannot justify or excuse the killing of another on the basis of self-defense"); *State v. Gaston*, 8th Dist. Cuyahoga No. 98904, 2013-Ohio-2331 (even if the defendant is not the immediate aggressor, that person cannot provoke an assault or voluntarily enter an encounter and then claim a right of self-defense after the victim predictably attacks); *State v. Sekic*, 8th Dist. Cuyahoga No. 95633, 2011-Ohio-3978, ¶ 14 (defendant cannot confront victim to continue an earlier altercation and then claim self-defense when the victim renews the aggression).

{¶ 14} Further, even if White was the initial aggressor in the altercation outside the club and even if we accept as undisputed that White chased Johnson south on 103rd Street until Johnson reached his car, Johnson first began firing at White and Fowler as they continued running south along 103rd Street *away* from Johnson, after any threat from White had subsided. Self-defense is not absolute.

{¶ 15} There are "'limitations to the application of self-defense,' and the defense 'is not available unless' there is evidence demonstrating 'that the force used to repel the danger was not more than the situation reasonably demanded.'" *State v. Zafar*, 10th Dist. Franklin No. 19AP-255, 2020-Ohio-3341, ¶ 52-53, quoting *State v. Johnson*, 6th Dist. Lucas No. L-08-1325, 2009-Ohio-3500, ¶ 12. It has therefore been concluded that "'the force used to defend must be objectively necessary and reasonable under the facts and circumstances of the case and in view of the danger apprehended.'" *Id.*, quoting *Johnson* and *Martin v. Cent. Ohio Transit Auth.*, 70 Ohio App.3d 83, 93, 590 N.E.2d 411 (10th Dist.1990). Self-defense is not justified

when an offender uses "a greater degree of force than is necessary under all the circumstances." *Id.*, citing *Johnson* and *State v. McLeod*, 82 Ohio App. 155, 157, 80 N.E.2d 699 (9th Dist.1948).

{¶ 16} In *Zafar*, for example, the defendant was a clerk at a convenience store who entered what started as a verbal altercation with the victim over a 50-cent surcharge for using a debit card. *Id.* at ¶ 19. The defendant testified that the victim threatened to kill him, and when another store clerk approached the victim, the victim began punching the other clerk. *Id.* at ¶ 21. At that point, the defendant began hitting the victim with an aluminum baseball bat, prevented him from leaving the store, and continued attacking despite the fact that the victim was subdued on the floor. *Id.* at ¶ 6-9. Even if the initial altercation placed the defendant in fear of his life based on the victim's threats, it was concluded that attacking the victim with the deadly weapon while he offered little to no resistance exceeded the force necessary to removing the danger. *Id.* at ¶ 53.

{¶ 17} Based on the limited arguments presented for review, we cannot conclude that the trial court erred in denying Johnson's request for a self-defense jury instruction. In this case, the undisputed evidence demonstrated that if Johnson was the person who fired the fatal shot killing Fowler, which we accept as true in light of the jury verdict, he did so at a time when both White and Fowler were running away from Johnson. *State v. Roland*, 10th Dist. Franklin No. 16AP-484, 2017-Ohio-557, ¶ 23 ("appellant's own version of the incident refuted any legitimate claim that he acted in self-defense" because the victim was running away when the

defendant fired his weapon and the victim was shot in the back, necessarily refuting any claim to self-defense); *State v. Henderson*, 1st Dist. Hamilton No. C-130541, 2014-Ohio-3829, ¶ 31 (self-defense claims cannot arise if the defendant shot the victim after the victim started running away).

{¶ 18} As a matter of law, Johnson cannot claim he was acting in self-defense when firing at people running away from him, even if one of those persons was considered the initial aggressor. *Zafar*. At that point, there has been no argument that Johnson's life was in danger to warrant any lethal response.[3]

{¶ 19} Finally, we must address Johnson's second and final assignment of error regarding the sufficiency of the evidence, which could result in an acquittal. *State v. Gideon*, 165 Ohio St.3d 142, 2020-Ohio-5635, 176 N.E.3d 706, ¶ 29 (insufficient evidence reversals require an acquittal on that particular count, and therefore, sustaining another assigned error that results in a new trial does not render the sufficiency issue moot). In this assignment of error, Johnson claims that

---

[3] Although Johnson briefly mentions the evidence of White's DNA and the DNA of two other unidentified persons being linked to shell casings from an unidentified firearm south of Johnson's position, that discussion is limited to a single sentence in the context of Johnson's argument that there is insufficient evidence that he fired the fatal shot for the purposes of the sufficiency-of-the-evidence argument. It is not this court's responsibility to supplement Johnson's argument on his behalf. App.R. 16(A)(7); *Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, at ¶ 19, quoting *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part).

his conviction for murder is not based on sufficient evidence because the state established that he fired the fatal shot through circumstantial evidence.[4]

{¶ 20} A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Credibility of the witnesses or evidence is immaterial under the sufficiency analysis; the appellate court must defer to the credibility determinations of the trier of fact and only reviews issues of law.

{¶ 21} Under Ohio law, a defendant may be convicted solely on the basis of circumstantial evidence. *State v. Nicely*, 39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1988), citing *State v. Kulig*, 37 Ohio St.2d 157, 309 N.E.2d 897 (1974). "'[P]roof of guilt may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence. All three classes have equal probative value, and circumstantial evidence has no less

    [4] Although not relevant to this case in which self-defense was not an affirmative defense considered at the trial, in *State v. Messenger*, 2021-Ohio-2044, 174 N.E.3d 425 (10th Dist.), the Tenth District concluded that "sufficiency of the evidence is not the proper framework to review whether the state proved the absence of self-defense." *Id.* at ¶ 44-45. The Ohio Supreme Court accepted *Messenger* for review and has completed oral arguments on the matter. *See* Supreme Court of Ohio Case No. 2021-0944. The outcome of *Messenger* would not impact this case.

value than the others." *Nicely* at 151, quoting *State v. Griffin*, 13 Ohio App.3d 376, 377, 469 N.E.2d 1329 (1st Dist.1979), and 1A Wigmore, *Evidence* 944, Section 24 et seq. (Tillers Rev.1983). "'Circumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable.'" *Id.*, quoting *United States v. Andrino*, 501 F.2d 1373, 1378 (9th Cir.1974). That other evidence could have been collected or analyzed is immaterial to the analysis.

{¶ 22} As Johnson expressly concedes, the circumstantial evidence presented by the state "create[s] the inference that Ms. Fowler was between the two shooters * * *." Appellant Brief at p. 13. According to Johnson, no other direct evidence demonstrated that the fatal shot was fired by him because it is equally plausible that the shot could have been fired by another person. On this point, Johnson solely relies on *State v. Jacobozzi*, 6 Ohio St.3d 59, 62, 451 N.E.2d 744 (1983), in which the Ohio Supreme Court concluded that when there are multiple inferences, which could be drawn from circumstantial evidence, any doubt must be resolved in favor of the accused. *Id.* In reaching that conclusion, *Jacobozzi* expressly relied on *State v. Sorgee*, 54 Ohio St.2d 464, 464, 377 N.E.2d 782 (1978), which was overruled through *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). In *Jenks*, the Ohio Supreme Court concluded, contrary to the sufficiency standard as espoused in *Sorgee*:

> the relevant inquiry does not involve how the appellate court might interpret the evidence. Rather, the inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any

reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at 273.

{¶ 23} Because Johnson's entire argument rests upon outdated case law, we decline to address his arguments any further. App.R. 16(A)(7); *Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, at ¶ 19, quoting *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part). Johnson's entire sufficiency argument is based on the claim that circumstantial evidence alone cannot sustain a conviction. The Ohio Supreme Court disagreed, and so must we. *Jenks*. The second assignment of error is overruled.

{¶ 24} Johnson's convictions are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, ADMINISTRATIVE JUDGE

FRANK DANIEL CELEBREZZE, III, J., CONCURS;
ANITA LASTER MAYS, J., DISSENTS (WITH SEPARATE OPINION)

ANITA LASTER MAY, J., DISSENTING:

{¶ 25} I respectfully dissent.

{¶ 26} The sole "eyewitness" from the scene did not see Fowler get shot from her hiding place in a driveway south of the club and Johnson's parked vehicle. There was no evidence of who shot Fowler. As the trial court commented prior to jury selection, "[i]n fact, after the first trial [of White], you know — these are serious charges facing Mr. Johnson." (Tr. 13.) "[H]owever, the film demonstrates that a strong self-defense case can be made, and I am still not clear after sitting through the first trial whose gun fired the bullet who killed [the victim]." (Tr. 13-14.) White's trial was held before the same trial court and concluded the morning that Johnson's trial began.

{¶ 27} The video served as the key piece of evidence since none of the photographic evidence of the physical evidence marker locations could be produced due to a recording chip error. Except for a list of marker locations that was read into the record while the witnesses "indicated" on the white sheet Google map printout,

there was no attempt to recreate the marker locations on the Google map. The list was not entered into evidence as the jury learned upon request.

{¶ 28} The video excerpts repeatedly played for the jury depict Johnson labeled "shooter" over defense objections and at some points with a freeze frame, White labeled "POI" or person of interest, and Johnson's two passengers labeled as passengers one and two. It is undisputed that White initiated the fight with Johnson and continued to pursue Johnson though others immediately stepped in between them after White's first punch.

{¶ 29} Security gathered to speak with White and others. Johnson talked with a few people in the area and subsequently walked to his car and tossed his hoodie into the front seat. Johnson briefly walked out of view behind his car in the direction of two males who had just crossed the street toward the area behind Johnson's car and were also out of view.

{¶ 30} Moments later, Johnson walked back toward the club and arrived at the corner as passenger two and other customers exited the club door located approximately ten feet from the corner. Passenger two and Johnson were at the corner when White exited the door followed by Fowler. Johnson and White looked toward each other, Johnson took a short step forward as he hitched up his pants and mouthed a few words toward White who quickly descended the steps as he pulled a gun from his right pocket. Johnson ran directly to his vehicle where passenger two jumped into the driver's seat. Johnson and passenger one stood on the driver's side

of the vehicle bending over slightly and peering over the roof toward the area just south of Johnson's car.

{¶ 31} Suddenly, they ducked as people scattered which indicated shots were being fired. At that point, Johnson was handed a gun from the vehicle and returned fire in the southerly direction. Bullet casings with White's DNA were discovered in the southerly direction that Johnson was shooting toward which supports an exchange of gunfire.

{¶ 32} Testimonial and physical evidence also supports shots were fired by four weapons. One shot was fired into the air by an unknown individual at the corner, and at least four more were fired by an individual identified by the state's eyewitness as wearing a remembrance shirt and dreadlocks. The eyewitness saw that a male fired a shot into the air and heard several more shots that she could not see from her hiding place at the rear of the driveway behind the club and south of Johnson's vehicle. The male was standing outside of the video frame at least several feet behind the area of Johnson's car according to the eyewitness. The eyewitness also testified that White had run past her heading south on E. 103rd Street as she ran to the driveway. At that point, the eyewitness did not know where Fowler was until Fowler later stumbled into the driveway asking for help.

{¶ 33} Under the 2019 amendment to R.C. 2901.05, Johnson did not bear "the burden of establishing the elements of self-defense by a preponderance of the evidence." *Fairview Park v. Peah*, 8th Dist. Cuyahoga No. 110128, 2021-Ohio-2685, ¶ 44, citing R.C. 2901.05(B)(1). Johnson had the "initial burden of producing

evidence 'that tends to support'" that he used the force in self-defense. *State v. Davidson-Dixon*, 2021-Ohio-1485, 170 N.E.3d 557, ¶ 18 (8th Dist.).

{¶ 34} The inquiry under the phrase "tends to support" for purposes of R.C. 2901.05, is whether the evidence is "'sufficient to raise a question in the mind of a reasonable juror.'" *Id*. at ¶ 19, quoting *State v. Tolle*, 4th Dist. Adams No. 19CA1095, 2020-Ohio-935, ¶ 24, citing *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978). Also, "[i]n deciding whether to give a self-defense instruction, the trial court must view the evidence in favor of the defendant, and the question of credibility is not to be considered." *Id*. ¶ 20.

{¶ 35} "The burden then shifts to the state under its burden of persuasion to prove beyond a reasonable doubt that the defendant did not use the force in self-defense." *Id*. at ¶ 18*,* citing *State v. Petway*, 2020-Ohio-3848, 156 N.E.3d 467, ¶ 55 (11th Dist.), citing *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31. "To satisfy this burden, the state must disprove at least one of the elements of self-defense." *Id*., citing *id.*

{¶ 36} Based on the record, I disagree that Johnson was at fault for creating the situation that gave rise to the use of force as determined by the trial court. Coupled with White's aggression in the club, assuming that Johnson taunted White from the corner, as the trial court stated, "[M]ere verbal harassment does not constitute provocation entitling a defendant to defend himself." *State v. Davis*, 7th Dist. Jefferson No. 01 JE 18, 2002-Ohio-1566, ¶ 12, citing *Bucyrus v. Fawley*, 50 Ohio App.3d 25, 552 N.E.2d 676 (1988); *State v. Badurik*, 7th Dist. Mahoning

No. 98 C.A. 106, 1999 Ohio App. LEXIS 6198 (Dec. 17, 1999) (hitting someone in response to a threat is not an act of self-defense that excuses the person from the assault charge).

{¶ 37} I would find that the majority's cited cases are distinguishable. In *Gaston*, 8th Dist. Cuyahoga No. 98904, 2013-Ohio-2331, the victim initiated the situation by verbal taunting. Gaston was walking away when he stopped and challenged the victim to "'come say that to my face,' and then waited for the victim to approach." *Davidson-Dixon*, quoting *Gaston* at ¶ 9. Witnesses indicated that Gaston assaulted the victim upon the victim's approach. In this case, White chased Johnson with a gun. Johnson retreated, ran directly to his car and subsequently responded to gun fire. In *Sekic*, 8th Dist. Cuyahoga No. 95633, 2011-Ohio-3978, the defendant called family for assistance and followed the victim to the victim's home where the altercation occurred. *Id*. at ¶ 5. Again, Johnson ran to his car.

{¶ 38} We further observe that "[w]hether the state disproves any of the elements of self-defense is left to the trier of fact to decide." *Davidson-Dixon*, 2021-Ohio-1485, 170 N.E.3d 557, ¶ 36 (8th Dist.), citing *State v. Morton*, 147 Ohio App.3d 43, 2002-Ohio-813, 768 N.E.2d 730, ¶ 52 (8th Dist.). In the instant case, as in *Davidson-Dixo*n, "the trier of fact [for the challenged convictions] was the jury, not the trial judge." *Id*. "The trial court improperly assumed the jury's role by making its own evaluation of the weight of the evidence and the credibility of the witnesses in deciding not to give the self-defense instruction." *Id*.

{¶ 39} I would find that the trial court's refusal to provide a self-defense instruction constituted an abuse of discretion.[5]

---

[5] The record indicates that a Crim.R. 16(B) notice was filed that said the motions in limine regarding retroactivity of S.B. 175 was served on defense counsel via portal on May 3, 2021. The motion is not attached, is not listed on the docket, and there is no judgment entry on the issue other than the general comments made on the record prior to voir dire.

> State: [S]imilarly as in the trial against the codefendant [White] prior to trial, the State of Ohio filed a motion in limine with respect to SB 175 regarding the retroactivity in the change in self-defense law. So it is clear, you can put your ruling with respect to that on the record for this defendant in this matter.

> Court: We have had an opportunity to investigate the retroactivity, and it is clear with the legislation was not meant to be retroactive, so there were two amendments. One was effective April 6th that will not apply to Mr. Johnson.

(Tr. 10.)