[Cite as *State v. Moore*, 2022-Ohio-4422.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                    Court of Appeals No.  S-22-004

    Appellee                                 Trial Court No.  20CR874

v.

Kurron Z. Moore                          **DECISION AND JUDGMENT**

    Appellant                               Decided:  December 9, 2022

* * * * *

Beth A. Tischler, Sandusky County Prosecuting Attorney, and
Laura E. Alkire, Assistant Prosecuting Attorney, for appellee.

Brett A. Klimkowsky, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Defendant-appellant, Kurron Z. Moore, appeals the January 6, 2022

judgment of the Sandusky Court of Common Pleas, convicting him of felonious assault

and an accompanying firearms specification, and denying his motion for a new trial.  For

the following reasons, we affirm the trial court judgment.

# I.    Background

{¶ 2} On November 3, 2020, Kurron Moore shot C.K. from the balcony of the Fremont apartment he shared with his girlfriend, Melissa.  That balcony is situated directly above the outside door to his apartment building.  Moore claimed that C.K. was with a group of people who were trying to break down the door to gain entry into the apartment.  He said that he intended to fire a warning shot into the ground and did not intend to shoot anyone.

{¶ 3} Moore was charged with attempted murder, a violation of R.C. 2903.02(A) and 2923.02(A) (Count 1), and felonious assault, a violation of R.C. 2903.11(A)(2)(1)(a) (Count 2).  Both counts alleged firearms specifications.  The case was tried to a jury beginning August 31, 2021.

{¶ 4} According to the evidence presented at trial, this incident was the culmination of a dispute between Melissa and another woman, Jodi.  Jodi was the friend of Melissa's ex-boyfriend, Curtis.  Melissa allegedly owed money to Curtis.  While at the apartment of a mutual friend who lived close to Melissa, Curtis asked Jodi to contact Melissa under the guise that she wanted to buy Percocet from her.  The plan was to have Melissa deliver the pills to the apartment and Curtis would confront her.  Melissa agreed to deliver the pills and showed up at the apartment accompanied by Moore.  Curtis was holding a hammer and he argued with Melissa about the money she owed him, but no violence ensued.  Things cooled down and Melissa and Moore left.

2.

{¶ 5} Later, Melissa contacted Jodi and asked if she wanted to come over and smoke with her.  Believing that their previous interaction had ended positively, Jodi accepted the invitation.  She and her boyfriend, Josh, went to Moore and Melissa's apartment.  When facing Moore and Melissa's apartment, there are garages on the left and on the right and an entryway in the middle.  There are two doors in the entryway—a screen door and a "man door."  Upon entering the building through these doors, there is a small vestibule, an entry to the garage on the right, then a staircase that leads up to a short hallway.  An interior door to Moore and Melissa's apartment was up the stairs and to the left.  Once inside the apartment, there is a balcony off the living room that can be accessed through a sliding glass door.  The balcony is situated directly above the entryway into the building.

{¶ 6} Jodi and Josh entered the building, but instead of going upstairs to the couple's apartment, they were ushered into the garage, where Melissa assaulted Jodi, then dragged her outside by her hair.  Jodi, who was homeless and carried her belongings in a bag, dropped a shoe and shampoo during the assault.  After Jodi and Josh left, Moore placed these items outside near the trash.

{¶ 7} Following the assault, Jodi returned to the friend's apartment where she had been earlier.  She became increasingly angry about the fight with Melissa because she felt that it had not been a fair fight.  She wanted to return to fight her again.  She messaged

3.

Melissa and told her: "Fuck u bitch I got u!!! My family comin for u bitch ass hoe." Jodi also wanted to retrieve the items that had fallen out of her bag.

{¶ 8} Around 3:00 a.m. on November 3, 2020, Josh's stepdaughter, C.K., and C.K.'s friends, Austin and Chelsea, called and asked if Jodi and Josh had any cigarettes. Jodi and Josh said yes, met up with them, then walked with them to Moore and Melissa's apartment to get her things. Jodi saw her shoe and shampoo sitting on top of the trash. Jodi, C.K., and Josh testified as to what happened next.

{¶ 9} Jodi testified that upon seeing her things with the trash, she became angry, kicked at the screen door to the apartment building, and threw trash around. She insisted that she never touched the interior door, did not try to open the garage door, did not beat on the house, did not see anyone come out of the apartment, and did not see anyone on the balcony. She maintained that she did not see any lights on and did not think anyone was home. Jodi claimed that Austin tossed a trash bag onto the apartment balcony, then threw a metal trash can, which hit a car and set off the alarm. The group started running when the alarm went off. Jodi heard a pop, saw C.K. on the ground, and heard C.K. say she had been hit. Jodi and Josh called 9-1-1 to report the shooting, but left the scene because they feared that Josh had an active warrant.

{¶ 10} For the most part, C.K.'s testimony was consistent with Jodi's. She testified that there was no talk of going over to fight or cause problems, and she did not see anyone come out of the apartment. She said that Jodi was upset when she saw her

4.

things with the trash by the doorway, and Jodi and Austin threw trash around, but she did not. C.K. did not see Jodi kick the apartment door and did not see anything get thrown onto the balcony, but Austin threw a trash can across the alley. Like Jodi, C.K. testified that a car alarm went off. She heard someone say "run!" She was in the alley by a telephone pole, heard a pop, then felt pain. She insisted that she was already running when she heard the gunshot.

{¶ 11} Josh explained that the group had gone to Moore and Melissa's apartment to retrieve Jodi's things. They went there on the way to a friend's place, where they intended to stay the night. Josh testified that Jodi was upset that her stuff was in the trash, and she and Austin began throwing trash. He thought that Jodi tried to throw trash up onto the balcony. He believed that Austin had thrown something that hit a car, the car alarm went off, and they ran. He did not see Jodi kick the door and did not see anyone come out the balcony. He denied ever kicking the door.

{¶ 12} Approximately the same time that Jodi and Josh called 9-1-1, Melissa and Moore also called 9-1-1. They reported that people had tried to break into the apartment, and Moore shot one of them.

{¶ 13} Police and emergency medical services responded to the scene. It appeared that C.K. had been shot in the chest. She was transported to a hospital. At the command of the responding officers, Moore and Melissa emerged from the apartment and Moore, who admitted firing one shot, was handcuffed without incident. Moore, Melissa,

5.

Chelsea, and Austin were separated into different cruisers and interviewed. Officers taped off the area and quickly located one shell casing right below the balcony of the apartment. A knife was discovered near the trash bins, directly to the right of the door.

{¶ 14} Detective Sergeant Derek Wensinger read Moore his Miranda rights, unhooked his handcuffs, and sat in the back of the cruiser with him. Moore told Detective Wensinger that he did not know the people at the scene. He said they were trying to come in and he fired one shot with his nine millimeter handgun. He said, "as soon as I saw them run, I shot, I shot once." Moore showed Detective Wensinger where he saw the group running and identified that it was the same area where he shot. Moore expressed concern for the victim and asked about her condition.

{¶ 15} Melissa told Detective Wensinger about the two "set-ups" that occurred within the previous 24 hours involving her and Jodi. Jodi came to the station later that evening to be interviewed and conveyed a consistent version of events. Detective Wensinger looked at both of the women's phones and reviewed Facebook Messenger messages between them.

{¶ 16} Detective Wensinger obtained a search warrant for the apartment and it was executed within several hours after the shooting—no one had been in or out since the shooting. Detective Jason Kiddey, who helped execute the warrant, testified that there was no damage to the screen door at the entryway into the building. He said there was prior damage to the door jamb of the man door that had been repaired with nails, and it

6.

was missing a latch or metal piece that the dead bolt fits into. That missing metal piece was not at the scene. Pictures showed black shoe marks on the middle of the man door and some fainter shoe prints lower on the door.

{¶ 17} A neighbor testified that the night of the incident, she heard voices, commotion, banging, and the gunshot, but did not hear a car alarm. The next day she saw shoeprints on the door that she had not seen before the shooting. Melissa's dad also testified to seeing shoeprints on the man door the day after the shooting. Both the neighbor and Melissa's dad said that the jamb of the man door was broken; it would close but would not stay shut—a rock or brick needed to be propped against it to hold it closed.

{¶ 18} Moore advanced a claim of self-defense. He said he saw the group of five people, heard kicking at his door, and was scared. He got his gun, loaded it, and went to the top of the stairs. He could see two people kicking at the door, causing it to vibrate. He then went to the balcony to get a better view, stood in the middle of the balcony, and peered over, at which point someone from the group threw something metal up at him.

{¶ 19} Moore claimed that he stepped back and shot at the grass directly ahead— what was supposed to be a warning shot—because he didn't want to hurt anyone. According to Moore, people scattered down the alley after he fired the gun, but he acknowledged that some had begun running before he fired. He insisted that there were still people kicking at the door when he shot. He stated that he saw no one in the line of fire and initially did not think he shot anyone. Melissa told him he shot someone and he

7.

told her to call the police. Moore testified that when he went downstairs after the shooting, the door into the building was cracked around the frame and partially opened. He also described that he kept a long light fixture propped against the door, and that fixture had fallen. Moore conceded that no one ever entered the home.

{¶ 20} The state presented evidence that spent casings eject to the right side of a gun. Because the casing was found on the ground under the balcony, toward the right side, police surmised that Moore was standing towards the railing when he fired his gun; however, it was also acknowledged that the casing could have bounced. No useable forensic evidence was found on the knife.

{¶ 21} Moore made Crim.R. 29 motions both after the state rested and after he rested. Those motions were denied and the case went to the jury. The jury found Moore guilty of felonious assault and the accompanying firearms specification. It found him not guilty of attempted murder.

{¶ 22} On November 16, 2021, Moore filed a motion for new trial. He claimed that two men—John Doe 1 and John Doe 2—told him that while incarcerated in the Sandusky County Jail in the same pod as Josh, Josh "intimated" to them that C.K. had been shot while Josh and others were trying to break into Moore's home. Moore claimed that this information "stands in stark contrast to the statements [Josh] provided under oath at trial" and "outlines an entirely different series of events than what was presented to the

8.

jury in the State's case-in-chief." He claimed that the jury would have more likely believed that he acted in self-defense if this evidence had been available at trial.

{¶ 23} The state opposed Moore's motion on the bases that (1) Moore failed to identify the two witnesses and failed to provide any evidence that those witnesses were reliable; (2) the evidence would serve only to impeach Josh, who testified and was subject to cross-examination; (3) the jury rejected Moore's self-defense theory because his trial testimony was at odds with statements he made immediately after the shooting; (4) Moore could have called Melissa to testify in support of his defense, but he failed to do so despite subpoenaing her; and (5) the evidence at issue would constitute inadmissible hearsay.

{¶ 24} The trial court denied Moore's motion on December 21, 2021, without analysis. It sentenced him on December 28, 2021, to a minimum prison term of four years and a maximum prison term of six years on the felonious-assault conviction and three years on the firearms specification, for a total stated prison term of seven to nine years. The conviction and sentence were memorialized in a judgment journalized on January 6, 2022.

{¶ 25} Moore appealed. He assigns the following error for our review:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO GRANT APPELLANT A NEW TRIAL.

9.

## II.     Law and Analysis

{¶ 26} Moore's sole assignment of error challenges the trial court's denial of his motion for a new trial. Crim.R. 33(A) provides that a new trial may be granted on a motion of the defendant for several enumerated reasons "affecting materially the defendant's substantial rights." One of those enumerated reasons—pertinent here—is "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." Crim.R. 33(A)(6). A motion for a new trial based on the ground of newly discovered evidence must be supported by "affidavits of the witnesses by whom such evidence is expected to be given." *Id.*

{¶ 27} To warrant a new trial on the ground of newly discovered evidence, it must be shown that the new evidence:

(1) discloses a strong probability that it will change the result if a new trial is granted,

(2) has been discovered since the trial,

(3) is such as could not in the exercise of due diligence have been discovered before the trial,

(4) is material to the issues,

(5) is not merely cumulative to former evidence, and

(6) does not merely impeach or contradict the former evidence.

*State v. Hatton,* Slip Opinion No. 2022-Ohio-3991, ¶ 32, quoting *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus. Crim.R. 33 does not by its terms require the trial court to conduct an evidentiary hearing on a motion for new trial. *Jalowiec* at ¶ 20; *State v. Hill,* 11th Dist. Trumbull No. 2016-T-0099, 2018-Ohio-4800, 125 N.E.3d 158, ¶ 85, citing *State v. White*, 8th Dist. Cuyahoga No. 105430, 2017-Ohio-6984, ¶ 28. However, "[a] defendant is entitled to an evidentiary hearing when the allegations in the motion demonstrate substantive grounds for relief." *Hatton* at ¶ 28, citing *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999).[1]

{¶ 28} We review a trial court's decision to grant or deny a motion for new trial based on newly discovered evidence under an abuse-of-discretion standard. *State v. Hawkins*, 66 Ohio St.3d 339, 350, 612 N.E.2d 1227 (1993). An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). An unreasonable decision is one that lacks sound reasoning to support the decision. *Hageman v. Bryan City Schools*, 10th Dist. Franklin No. 17AP-742, 2019-Ohio-223, ¶ 13. "An arbitrary decision is one that lacks adequate determining principle and is not governed by any fixed rules or standard." *Id.* quoting *Porter, Wright, Morris & Arthur, LLP v. Frutta del Mondo, Ltd.*, 10th Dist. No. 08AP-69, 2008-Ohio-3567, ¶ 11. And an

---

[1] Moore does not raise error in the trial court's decision to deny his motion *without a hearing*.

11.

unconscionable decision is one "that affronts the sense of justice, decency, or reasonableness." *Id.* "The decision to grant a motion for a new trial is an extraordinary measure that should be used only when the evidence presented weighs heavily against the conviction." *State v. Solether,* 6th Dist. Wood No. WD-07-053, 2008-Ohio-4738, ¶ 21, quoting *State v. Samatar,* 152 Ohio App.3d 311, 2003-Ohio-1639, 787 N.E.2d 691, ¶ 35 (10th Dist.).

{¶ 29} Moore's argument on appeal mirrors what he argued in the trial court. He argues that (1) if Josh had testified truthfully, the jury would more likely have accepted Moore's claim of self-defense; (2) he learned of the newly-discovered evidence on November 7 and 15, 2021—66 and 74 days after trial; (3) he exercised due diligence in preparing for trial, but the new evidence came to light only after the proponents of the new evidence became housed with him in the Sandusky County Jail, therefore, no amount of due diligence would have uncovered this evidence sooner; (4) the intent of the group of individuals who came to his home on November 3, 2021, is material to explain his actions; (5) the evidence is not cumulative because although Moore maintained all along that he acted in self-defense in response to the group's attempt to break into his home, members of the group who testified at trial denied that they intended to break in; and (6) courts have granted new trials where the new evidence constituted impeachment or contradictory evidence in cases where that evidence was likely to change the outcome of the trial.

12.

{¶ 30} As it did in the trial court, the state responds that a new trial is not warranted where the newly-discovered evidence merely contradicts trial evidence or impeaches a witness, and it emphasizes that Josh was subject to cross-examination. The state insists that the new evidence at issue comes from unidentified witnesses who have not been shown to be reliable and whose testimony is inadmissible. It contends that despite evidence presented by the defense suggesting that a break-in was in progress, the jury nonetheless rejected Moore's self-defense theory because of the statements he made to Detective Wensinger immediately after the shooting, which contradicted his trial testimony. The state points out that Moore originally planned to call Melissa to testify and she could have bolstered his defense, but he abandoned this plan at the last minute and did not call her.

{¶ 31} We conclude that the trial court did not abuse its discretion when it denied Moore's motion for a new trial. We reach this conclusion for several reasons.

{¶ 32} First, we observe that Moore failed to present any affidavits in support of his motion for new trial. Civ.R. 33(A)(6) specifically requires that a motion for a new trial based on the ground of newly discovered evidence be supported by "affidavits of the witnesses by whom such evidence is expected to be given." *See In re Gibson*, 2d Dist. Montgomery No. 18669, 2001 WL 669364, *2 (Jun. 15, 2001) (finding that motion for new trial was not properly made under Civ.R. 33(A)(6)—and trial court did not abuse its discretion by denying the motion—where defendant failed to offer affidavit in support or

request leave of court to secure supporting affidavits); *State v. Lechner*, 4th Dist. Highland No. 724, 1990 WL 252981, *3 (Dec. 21, 1990) ("Although appellant contends the new evidence warranted a new trial, he did not comply with the portion of Crim.R. 33 which requires affidavits of witnesses by whom such evidence is expected to be given.").

{¶ 33} Second, there is not a strong probability that the newly-discovered evidence would change the result if a new trial is granted. To begin with, it seems unlikely that the newly-discovered evidence would be admissible. It is hearsay within hearsay. *See State v. Henderson*, 9th Dist. Lorain No. 92CA005434, 1993 WL 140448, *2 (May 5, 1993) (finding no error in the court's denial of motion for a new trial where new evidence that victim had a gun would be excluded as hearsay). Moore claims that unidentified John Doe witnesses told him that Josh told them that he and the group intended to break into the apartment. It is not clear that Moore even knows the declarants' names, let alone that there is any hearsay exception under which this evidence could be admitted. *See State v. Allen*, 6th Dist. Lucas No. L-97-1444, 1999 WL 146259, *8 (Mar. 19, 1999) (finding that affidavit of person alleging that trial witness confessed to him that he had committed the murder of which defendant was convicted was inadmissible hearsay upon which new trial would not be granted); *Solether* at ¶ 24 (observing that it was doubtful that statement of victim overheard by juror's boyfriend would be admissible under the evidence rules).

{¶ 34} What's more, regardless of any purported attempt to break into the apartment, the jury listened to recorded statements by Moore indicating that he fired his

14.

gun after the group had already started running away. So even if Moore was able to show that Josh had tried to break into the apartment, the jury heard Moore say that he fired his gun after the threat had subsided. *State v. Johnson*, 8th Dist. Cuyahoga No. 110673, 2022-Ohio-2577, ¶ 18 ("As a matter of law, [defendant] cannot claim he was acting in self-defense when firing at people running away from him, even if one of those persons was considered the initial aggressor.").

{¶ 35} And Moore testified that he was at the center of the balcony and fired one warning shot straight ahead. However, C.K. testified that she was running away from the area of the apartment and was struck by the bullet when she reached the telephone pole, which (if one is standing on the balcony looking away from the apartment) is located to the far right of the balcony; blood evidence at the scene was consistent with this account. The door was located directly under the balcony. Even if Josh was trying to break in to the apartment, Moore clearly fired his shot in the direction of the people who were running away—not in the direction of the person who was allegedly trying to break down the door. As such, there is not a strong probability that the outcome of the trial would have been different.

{¶ 36} Third, the new evidence—information indicating that Josh, Jodi, and the group were attempting to break into Moore's apartment—is mere impeachment evidence or evidence intended to contradict Josh's testimony that the group was there only to retrieve Jodi's belongings and that neither he nor Jodi kicked at the door. As such, it is

15.

not the type of evidence that would warrant a new trial. *See Allen* at * 8 (finding that even if trial witness's confession to third party was not inadmissible hearsay, it still did not warrant new trial because it served only to impeach or contradict former evidence presented at the trial); *State v. McCoy*, 2d Dist. Greene No. 04CA112, 2005-Ohio-6837, ¶ 16 ("[T]o the extent that Defendant's newly discovered evidence merely impeaches or contradicts former evidence presented at the trial, it does not warrant granting a new trial."); *Henderson* at * 2 (finding no error in the court's denial of motion for a new trial where testimony that victim had a gun "would only serve to contradict the testimony of three other witnesses").

{¶ 37} Finally, the new evidence is merely cumulative. Moore testified that he believed someone was trying to break into the apartment. Melissa told this to the 9-1-1 operator, and that recording was played for the jury. Jodi admitted to kicking the screen door. Moore's neighbor and Melissa's dad testified about damage that they saw, suggesting that someone had tried to get into the home. Evidence that Josh admitted trying to break in is cumulative of that evidence. And even if the evidence arguably had greater value than what was presented at trial, the fact still remains that Moore fired at the group as they ran *away* from his home—he did not fire at someone entering the home.

{¶ 38} Accordingly, we conclude that the trial court did not abuse its discretion when it denied Moore's motion for new trial. We find Moore's sole assignment of error not well-taken.

16.

### III.  Conclusion

**{¶ 39}** The trial court did not err in denying Moore's motion for a new trial. Moore did not support his motion with affidavits as required by Crim.R. 33(A)(6). Moore has failed to show that the newly-discovered evidence is admissible.  The evidence does not disclose a strong probability that it will change the result if a new trial is granted, purports to impeach or contradict trial testimony, and is cumulative.  We find Moore's assignment of error not well-taken, and we affirm the January 6, 2022 judgment of the Sandusky Court of Common Pleas.  Moore is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.          _____
                                                    JUDGE
Gene A. Zmuda, J.

                                          _____
Myron C. Duhart, P.J.                           JUDGE
CONCUR.

                                          _____
                                                    JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.